EDWARD SIMONS

*v.*

THE PEOPLE *ex rel.* Andrew Dunning.

*Filed at Ottawa November 13, 1886.*

119 617
e189 ⁴626
f189 ⁶626

1. ELECTIONS—*when there is no vacancy.* After a successor of a deceased trustee of schools has been regularly and legally elected, and qualified, a second election to fill the same unexpired term will be a nullity, for the reason there is no vacancy to fill.

2. SAME—*school trustees—polling places—and herein, of changing the place of voting.* Elections for trustees of schools are properly held at the places fixed by the county board for holding general elections.

3. An election to fill a vacancy in the office of a school trustee, held at the time and places stated in the notices thereof, (which places are those fixed by the county board for holding general elections,) and held by proper officers, will be a legal election.

4. A certain town in a township was divided into two voting districts by the county board, for general elections, with a polling place in each. The trustees of schools fixed only one polling place for such town, which was a central point, at which school elections had been held for several years prior thereto. It was conceded·that no one was prevented from voting for want of enough voting places, or on account of the place at which the votes were taken. It also appeared that it was not practicable to have held the election at both polling places fixed by the county board: *Held*, that the board properly held the election at the place at which the school elections had been previously had.

5. Any such change in the place of receiving votes at an election for school trustees as would mislead electors, or prevent a full and fair election, will render the election invalid. But a slight change from that named in the notice, as to the place of voting, which misleads or deceives no voter, will not invalidate the election.

6. So where an established polling place was, in the notice of an election to fill a vacancy in the office of school trustee, described as "Kuhn's Hall," instead of "Kuhn's real estate office," on the morning of the election the voting place was changed to the latter place, not more than two hundred feet from "Kuhn's Hall," and in plain view of the same: *Held*, that so slight a change in the place of voting ought not to render the election void, it being in all other respects legal, especially when it was conceded that no one was prevented from voting at such election on account of such change.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

Messrs. MATTHEWS & DICKER, for the appellant:

The right to hold an election, or even to fill a vacancy, is derived from the law, and not from the notice. McCrary on Elections, sec. 118.

It was proper, at the election in October, to appoint but one polling place for the Norwood Park district. Rev. Stat. chap. 122, sec. 27; chap. 46, sec. 30; chap. 139, sec. 67; chap. 46, secs. 52, 58, 62, 63.

As to the power to change the voting place on election day, as before referred to, see *Knowles* v. *Yates*, 31 Cal. 83; *Miller* v. *English*, 21 N. J. L. 317; *Broadhead* v. *Milwaukee*, 19 Wis. 624; *People* v. *Martin*, 5 N. Y. 27; *Goodell* v. *Baker*,

SIMONS v. THE PEOPLE *ex rel.* 619

Brief for the Appellee. Opinion of the Court.

8 Cow. 286; *Dale* v. *Irwin*, 78 Ill. 170; *Chicago* v. *People*, 80 id. 496.

Messrs. CRAFTS & STEVENS, for the appellee:

The holding of elections at the places fixed by law is not directory, but mandatory, whether they are fixed by a court or by a board of officers. When once legally fixed by proper authority, it can only be changed by proper authority, and in the manner provided by law. McCrary on Elections, 126, sec. 115; *Commonwealth* v. *Commissioners*, 5 Rawle, 75; *Marshall* v. *Kerns*, 2 Swan. 68; *Foster* v. *Scarff*, 15 Ohio St. 535; *Stephens* v. *People*, 89 Ill. 342; Rev. Stat. chap. 122, sec. 27.

As to estoppel to question the validity and legality of elections, see *People* v. *Wait*, 70 Ill. 27; *People* v. *Moore*, 73 id. 132.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the Court:

The information in this case is in the nature of a *quo warranto,* and charges Edward Simons with having usurped and entered into, and exercised the powers and duties of the office of trustee of schools of a certain township, particularly described, both by name and numbers. Two pleas, stating definitely the title of respondent to the office in question, were filed by him, and to both of which a demurrer was sustained, and respondent not answering further, judgment of *ouster* was pronounced. In the first count of the information, respondent is simply charged with usurping the office of trustee of schools in a certain township, and exercising the powers and duties of such office, but in the second count it is averred the relator, Andrew Dunning, on the 21st day of November, 1885, was regularly and legally elected to the office of trustee of schools in such township, by the legal voters, and that he took the necessary oath required by law, and entered upon the duties of such office, and that afterwards, respondent unlawfully usurped such office, and entered into and exercised

the powers and duties of the same, without any authority of law for so doing. The title to such office, as set forth in the first plea, respondent avers was acquired under an election held on the 24th day of October, 1885, to elect a successor to a former deceased trustee, to fill the unexpired time of such deceased officer, and at which election respondent was elected his successor. In the second plea, respondent avers he was elected trustee of schools at a special election held in the township on the 21st day of November, 1885. It is obvious, if respondent was regularly and legally elected trustee of schools at the election held on the 24th day of October, 1885, to fill the unexpired term of the former trustee, the second election, held on the 21st day of November, 1885, to elect a successor to the same deceased trustee, would be a mere nullity, for it would be an election to fill a vacancy in an office where none existed, either in law or in fact.

The facts appear on admission by demurrer to the plea, and it is a question of law whether the facts, as stated in the first plea, show that respondent was legally elected to the office of trustee of schools at the election held on the 24th day of October, 1885. On the 10th day of October, 1885, the surviving trustees ordered an election to be held in the township, on Saturday, the 24th day of October, 1885, to elect a trustee to fill the vacancy in the board, occasioned by the death of one of the trustees. At the same meeting when the election was ordered, the board appointed the polling places in the township, six in number, all of which polling places are situated in the township, and conveniently located for receiving the votes of all the voters of the township. Accordingly, the township treasurer gave the usual notice for the holding of such election, on the day named, and at the several places appointed by the board to be polling places to be used at the ensuing election. It is then averred, "that the manner of calling said election, and of fixing the polling places and giving notice of the same, was as provided by law, and in accordance

with the custom used at the previous election of school trustees in said township; the polling places before named were the same polling places named and used at three previous elections of trustees of schools of said township, and the boundaries of the districts for which each of said polling places was appointed were well understood by the electors of said township, and said districts, taken together, embraced the whole of said township, and no more territory, and no person entitled to vote at said election failed to do so by reason of any insufficiency of the number of polling places appointed, or by reason of any misunderstanding of the boundaries of any district for which any of the said polling places were appointed, as aforesaid."

The election ordered to be held on the 24th of October, 1885, was in fact held on that day at the polling places appointed by the board, in pursuance of the notice given, except that on the day of the election the polling place in district No. 3 was changed from "Kuhn's Hall" to "Kuhn's real estate office," the latter place being in plain sight of the former, with the space between, vacant, and except a similar change was made before the voting began, on the day of the election, in the Norwood Park district, from "Ball's store" across the railroad to "Fox's store." It is averred the polling places, and the boundaries for the voting districts, used at such elections, were the same as fixed by the board of commissioners of Cook county to be used at general elections in the towns of Jefferson and Norwood Park, except that the county board divided the town of Norwood Park into two voting districts, with a polling place for each, and with one-half of the territory of each such voting district within township 40, and at such election only one polling place was used in the part of the town of Norwood Park within township 40, which polling place so used was nearer the center of that part of the town of Norwood Park within township 40, than were either of the polling places fixed by the board of commissioners to be used

at general elections in the town for polling places for the two voting districts into which the whole town of Norwood Park was divided.

It will thus be seen, the polling places at which the election was held under the order of the board calling such election, were the same as fixed by the county board for holding general elections, except in the district of Norwood Park. In all districts other than the latter, the election was held at the places fixed by the county board for holding general elections, and that is according to law. As to the Norwood Park district, the admission is, the election was appointed to be held at the place where the three previous elections for trustees of schools had been held. At the election so held in pursuance of the notice given, respondent received a majority of the votes of the township cast at such election, and it is by virtue of that election respondent claims the right to exercise the powers and duties of the office of trustee of schools.

It must be conceded, the elections held in the first, second, fourth and fifth districts, at which respondent claims to have been elected, on the 24th of October, were entirely regular in every respect. The election in these several districts was held at the time stated in the notices given, at the places stated, which were the polling places fixed by the county board for holding general elections, and by the proper officers. Of the votes cast at these four polling places, where it is conceded the election was held according to law, respondent received a majority of the votes so cast, over his opponent, Mr. Fry. If the votes in districts Nos. 3 and 6, where, it is insisted, irregularities intervened, should be counted, still, respondent would have a majority of all the votes cast at such election. There was no candidate opposed to respondent, except Mr. Fry, and it does not appear he ever claimed to have been elected at that election, or at any other time.

What is it then, if anything, that renders the election of the 24th of October, 1885, void? It was held in the several

districts of the township at the time mentioned in the notice, and every legal voter was afforded an opportunity to vote for the candidate of his choice. The only irregularity in the third district in conducting the election, is, that it is admitted by the plea the polling place on the morning of the election was changed from "Kuhn's Hall" to "Kuhn's real estate office." It will be seen the averment is, "Kuhn's real estate office" is the place in that district fixed by the county board where all general and special elections shall be held. The notice given by the treasurer seems to have stated the election would be held at "Kuhn's Hall." All that was done was, on the morning of the election, to change the polling place from the hall to the real estate office, which was the proper place fixed by the proper authorities for holding the election. The buildings were not more than two hundred feet apart, in plain sight of each other, with open space between. Every voter could readily see what was done. Indeed, the buildings were in fact so near together they were practically at the same place. So slight a change in the place of voting ought not to render void an election in all other respects regular and according to law,—especially so, when it is admitted no one was prevented from voting at such election on account of the change of the polling place. As was said by this court in *Chicago* v. *People*, 80 Ill. 507: "It is not perceived wherein the change made was calculated to produce any injurious effects, and we think it should not be held sufficient grounds to invalidate the election." *Dale* v. *Irwin*, 78 Ill. 170.

With respect to the polling place in Norwood Park district, it appears, from the averments of the plea, the county board had divided the town of Norwood Park into two voting districts, with a polling place in each, and with one-half of the territory of each such voting district within township 40, where the election was to be held. It also appears, only one polling place was used at this school election in the part of the town of Norwood Park within township 40, but it is alleged the

place so used was nearer the center of that part of the town of Norwood Park within township 40, than were either of the polling places fixed by the county board to be used at general elections in that town for polling places for the two voting districts into which the town of Norwood Park was divided. The polling place appointed in Norwood Park district was the usual polling place for school elections, and it appears the three last elections for school trustees had been held at that place, and the allegation is, this fact was well understood by the electors of the township. It is alleged, and of course admitted by the demurrer, the districts, taken together, embraced the whole of the township, and no more territory, and that no person entitled to vote at such election failed to do so by reason of any insufficiency in the number of polling places appointed, or by reason of any misunderstanding of the boundaries of any district for which polling places were appointed. The law does not contemplate there shall be more than one polling place in each district, and it seems it would not have been practicable to hold an election for school trustee at both polling places fixed by the county board for holding general elections in the two districts composing the entire town of Norwood Park. It was therefore proper for the board of trustees to appoint, as a polling place in Norwood Park, the place at which school elections had been previously held. It was well understood by the electors, and no one ever complained he was incommoded or prevented from voting at such election on account of the polling place selected.

The only remaining question to be considered has reference to the removal of the polling place in Norwood Park district on the morning of the election, before the voting commenced. The polling place first appointed was at "Ball's store," but it was changed from that place across the railroad to "Fox's store," and it is averred, in this connection, no voter in the district was ignorant of the change made, or failed to vote at such election by reason of the change in the polling

place. What was said in respect to changing the polling place in district 3, applies with equal force to changing the polling place in Norwood Park district. No great or material change was made of the polling places in either district, and it is distinctly made to appear no voter was ignorant of such changes, or failed to vote on account of the changes made in the polling places. The election was as full and fair, so far as anything appears from the record, as it would have been had no changes been made as to the place of receiving the votes. Every elector was afforded an opportunity to vote for the candidate of his choice. Any such change in polling places as would mislead electors, or prevent a full and fair election, would, of course, render the election invalid. But in this case it is made to appear no injurious effects followed from the slight changes made in the polling places, as was done, and this court is unwilling to hold that mere trivial causes will invalidate and render void an election otherwise full, free and fair. Public policy forbids the adoption of any rule that will work such disastrous results, and defeat the expression of the popular will at elections.

There is yet another view that may be taken, and that is; if the election held in the third district and in Norwood Park district should be held to be invalid on account of changing the polling places, as was done, and the votes of both districts rejected, still, as has been seen, respondent would have been elected by the legal votes cast at the election in the other districts. The result is precisely the same, whether the votes cast in district No. 3 and in Norwood Park district be counted or not. In either case, it will appear respondent was elected, and can hold the office until his successor shall be elected according to law.

Holding, as is done, the election set forth in the first plea gave respondent a valid title to the office he is charged with usurping, the demurrer to the plea should have been overruled. This view disposes of the whole case, and it will not

40—119 Ill.

be necessary to consider any question supposed to arise on the second plea.

The judgment of the Appellate Court will be reversed, and the cause remanded to the circuit court.

*Judgment reversed.*

Mr. JUSTICE SHOPE, dissenting.

SHELDON and MAGRUGER, JJ.: We concur in the opinion, except as respects the second plea. We think that the second plea should have been disposed of.