THE PEOPLE OF THE STATE OF ILLINOIS

v.

JOHN B. BROWN et al.

Opinion filed April 18, 1901.

1. STATUTES—presumption as to repeal by implication. The presumption obtains that the legislature, by a general law, did not intend to abrogate the provisions of a prior act relating to a special subject, and such repeal will not be effected when there are no negative words used, unless the two acts cannot stand together.

2. ELECTIONS—effect of section 1 of Australian Ballot act upon section 19 of article 3 of School law. The effect of section 1 of the Australian Ballot act upon section 19 of article 3 of the School law, which provides that trustees of schools may be elected "at the same time and in the same manner as the town officers," is not to repeal the provisions of said section 19, but if the election of trustees of schools be held under the School law the Australian Ballot act does not apply, while it does apply if such trustees be elected at the same time as the township officers.

3. SAME—election for township high school is a special election. The fact that an election for or against the establishment of a township high school is held at the same time and place as that at which trustees of schools are elected, does not, when the election is held on the annual town meeting day, make it a part of the township election, but, on the contrary, it remains a special election conducted under the School law and not the Australian Ballot act.

4. SAME—when election for school trustees is not void—location of voting place. An election for school trustees held at the time of electing town officers at the annual town meeting is not void because it does not affirmatively appear that the place where the election was held had been designated by the electors, at their annual meeting, as the place for holding elections, where it has been a custom, acquiesced in for years, to hold the annual meeting and election at such place, and particularly where it is admitted that no votes were lost because of the location of the voting place.

APPEAL from the Circuit Court of Warren county; the Hon. G. W. THOMPSON, Judge, presiding.

L. H. HANNA, State's Attorney, (KIRKPATRICK & ALEXANDER, and GRIER & STEWART, of counsel,) for the People.

J. A. McKENZIE, and WILLIAMS, LAWRENCE & WELSH, (J. B. BROWN, of counsel,) for appellees.

Mr. JUSTICE HAND delivered the opinion of the court:

This is an information in the nature of a *quo warranto,* charging appellees with usurping and wrongfully exercising the franchise of a township high school district, and with usurping and wrongfully holding and exercising the office of members of the township board of education in township 9, north, range 2, west, Warren county. The appellees filed a plea averring that Warren county had adopted township organization; that the boundaries of the town of Roseville and township 9, north, range 2, west, Warren county, coincide and are identical; that on the first Tuesday of April, 1900, at a special election held at the opera house in Roseville, the proposition for or against establishing a township high school in said township was submitted to a vote of the people of said township, resulting in a majority vote for the proposition, and that appellees were subsequently duly elected to the office of members of the township board of education of said township, and have duly qualified and are acting as members of such board. The court having overruled a demurrer to said plea and dismissed the information, an appeal has been prosecuted to this court.

It is contended by appellant that said election was not lawfully held on the first Tuesday of April, and that all action based thereon is absolutely void. It is provided by section 38 of article 3 of the School law, (Hurd's Stat. 1899, p. 1530,) that "upon petition of not less than fifty voters of any school township, filed with the town-

ship treasurer at least fifteen days preceding the regular election of trustees, it shall be the duty of said treasurer to notify the voters of said township that an election 'For' or 'Against' a township high school will be held at the said next regular election of trustees." In section 19 of said article 3 it is provided: "In counties adopting township organization, in each and every township whose boundaries coincide and are identical with those of the town, as established under the township organization laws, the trustee or trustees [of schools] shall be elected at the same time, and in the same manner as the town officers." And in section 1 of article 6 of the Township Organization law (Hurd's Stat. 1899, p. 1708,) it is provided: "The annual town meeting, in the respective towns, for the election of town officers, and the transaction of the business of the town, shall be held on the first Tuesday of April in each year."

Under the foregoing sections the election at which said proposition was submitted was legally held on the first Tuesday in April, 1900, unless said section 19 has been repealed by the first section of an act in force July 1, 1891, known as the "Australian Ballot act," (Hurd's Stat. 1899, p. 802,) which is as follows: "That in all elections hereafter to be held in this State for public officers, except for trustees of schools, school directors, members of boards of education, officers of road districts in counties not under township organization, the voting shall be by ballots printed and distributed at public expense as hereinafter provided, and no other ballots shall be used."

It is not claimed that section 19 is repealed by direct enactment, but it is urged that, inasmuch as said section provides that trustees of schools shall be elected "in the same manner as the town officers," and the act of July 1, 1891, expressly excludes trustees of schools and includes within its terms town officers, it becomes impossible for trustees of schools to be elected in the same manner as town officers, and that said section 19 must

necessarily be abrogated. If possible, it is the duty of the court to so construe these sections that they may both stand. Repeals by implication are not favored, and a later statute will not be held to repeal a former one unless they are irreconcilable. The act of July 1, 1891, is general in character, while section 19 is special, and is intended to govern the election of trustees of schools in special cases only. The presumption always obtains that the legislature by a general law does not intend to abrogate the provisions of a prior act relating to a special subject, and that such repeal will only be effected when there are no negative words, unless it is impossible for the two acts to stand together. In *Village of Ridgway* v. *Gallatin County*, 181 Ill. 521, in speaking of repeals by implication, we say (p. 525): "Such a repeal is not favored in the law, and a later statute will never be held to repeal an earlier one unless they cannot be reconciled. It is the duty of the courts to construe them so as to avoid repeal, if such a construction can be given, and a statute will never be held to be repealed by implication if it can be avoided by any reasonable hypothesis. * * * It is also the rule that a subsequent law which is general does not abrogate or repeal a former one which is special and intended to operate upon a particular subject, and that if the later statute does not contain negative words it will not repeal the particular provisions of the special law on the same subject, unless it is impossible that both should be enforced."

It is clear, under the rules as above announced, instead of holding section 19 to be repealed by the first section of the act of July 1, 1891, said sections should be construed together, to the end, if possible, that the legislative intent, as therein expressed, should be carried into effect. By so doing the limitation in the act of July 1, 1891, that it shall not apply to the election of trustees of schools, would be held not to apply when such election was held in pursuance of the provisions of section 19. In

other words, when trustees of schools are elected at the annual township election they should be elected "in the same manner as the township officers," which would be under the Australian Ballot act. The purpose of the legislature in enacting section 19 was for the convenience and accommodation of the voters of those communities wherein the town and township boundaries coincide, by permitting them to hold the school and township elections on the same day, instead of on separate days. The legislature has evidenced no intention to change such rule, and we are of the opinion the same has not been changed, and hold that, as heretofore, trustees of schools in townships where the town and school boundaries coincide may be elected "at the same time and in the same manner as the town officers." If the election of trustees of schools be held under the School law the Australian Ballot act does not apply, while it does apply if such trustees be elected at the same time as the township officers.

It is said if section 19 is not repealed, and the election of trustees of schools in townships where the municipal and congressional boundaries agree is to be held at the same time and in the same manner as that of town officers, and the Australian Ballot act applies to such election, and it was proper to hold the election for or against the establishment of a high school district at the same time and the same place, then the election for or against the establishment of a township high school should have been voted upon under the Australian Ballot act, and that as such election was not so held, the organization of said township high school district is void. We do not agree with this contention. An election for or against the establishment of a township high school is a special election called by the township treasurer upon the petition of fifty legal voters of the township. The fact that such election is held at the same time and place as that at which trustees of schools are elected, does not,

when such election is held on the annual town meeting day, as the election in this case was, make it a part of the township election. It remains a special election, is conducted by the township trustees under the School law, and not under the Australian Ballot act. *People* v. *Cowden,* 160 Ill. 557.

It is next contended that it does not affirmatively appear that the opera house in the village of Roseville had been designated by the electors, at their annual town meeting, as the place for holding elections, and for that reason the election was void and said township high school improperly organized. It is averred in said plea that the treasurer of said township, on March 12, 1900, gave notice for an election to be held on April 3, 1900, at the opera house in Roseville, to vote for or against the proposition to establish a high school; that Center school house, in the said town, was prior to March 11, 1875, for many years the legal place of holding the annual town meeting and election of town officers in said town; that at the town meeting in 1875 the place of holding the town meetings and elections was changed to the village of Roseville, in said township; that the annual town meetings and elections from 1876, and ever since, have been held in Roseville; that the town meetings and elections were held in the "truck house" from 1880 to 1895, pursuant to notices by the town clerk; that the truck house became unsuitable on account of fire apparatus therein, whereupon the board of supervisors, at their July, 1896, meeting, changed the voting place from the truck house to the opera house; that the opera house is situated on the same lot as the truck house, the doors of the two buildings being about one hundred feet apart; that all town meetings and elections since 1896 have been held in the opera house, pursuant to notice given by the town clerk, and that the voters have recognized and accepted it as the voting place, and that no legal voter, by reason of said change, was deprived of his franchise at the elec-

tion of April 3, 1900, by reason of the location of said election at the opera house.

The statute (chap. 139, art. 6, sec. 4,) provides that the place of holding elections shall be at some convenient place in the town, to be fixed by the electors at their annual town meeting. The board of supervisors by resolution, or the town clerk or township treasurer by notice, had no power, therefore, to fix the place of holding the annual town meetings and elections. It has been held, where there has been a custom, acquiesced in for years, to hold an election at a particular place, and the people suppose that said place is the correct one, or some change not calculated to produce any injurious effect has been made in the place of holding elections, the holding of an election at such place is not sufficient to avoid the election. (10 Am. & Eng. Ency. of Law,—2d ed.—685.) In *Steele* v. *Calhoun*, 61 Miss. 556, the proper authorities neglected to fix the place for an election, but the voters by common consent met and held the election at the place where such election had usually been held, and the election was held to be valid.

In *Dale* v. *Irwin*, 78 Ill. 170, the place of holding an election was fixed by the proper authorities at a certain store. When the judges of election and the voters appeared at the store on the day of election, the proprietors forbade them the use of it. They then repaired to a barber's shop on the same side of the street and not more than one hundred feet from the store and there opened the polls. The election proceeded without hindrance, all voters knowing where the polls were opened, as the place was readily seen from the store and made manifest by the crowd going and returning therefrom. No fraud or improper motive was shown to produce the change, nor did any voter complain that he was deprived thereby of an opportunity to vote. On page 181 it is said: "It seems to have been deemed necessary by the judges and voters, on being deprived the use of the store, that

some other convenient place should be provided for the poll, and, rather than deprive three hundred and ninety-two voters of their privilege, we are disposed to hold there was no wrong done in holding the election at the barber's shop."

In *Simons* v. *People*, 119 Ill. 617, which was an information in the nature of a *quo warranto* charging Simons with having usurped and entered into and exercised the power and duties of the office of trustee of schools of a certain township, it appeared that the notice of election described the polling place as "Kuhn's Hall" instead of "Kuhn's real estate office." On the morning of the election the voting place was changed to the latter place, some two hundred feet distant from the hall but in plain view of the same. On page 623 the court say: "The only irregularity in the third district in conducting the election is, that it is admitted by the plea the polling place on the morning of the election was changed from 'Kuhn's Hall' to 'Kuhn's real estate office.' It will be seen the averment is 'Kuhn's real estate office' is the place in that district fixed by the county board where all general and special elections shall be held. The notice given by the treasurer seems to have stated the election would be held at 'Kuhn's Hall.' All that was done was, on the morning of the election, to change the polling place from the hall to the real estate office, which was the proper place fixed by the proper authorities for holding the election. The buildings were not more than two hundred feet apart, in plain sight of each other, with open space between. Every voter could readily see what was done. Indeed, the buildings were in fact so near together they were practically at the same place. So slight a change in the place of voting ought not to render void an election in all other respects regular and according to law,—especially so, when it is admitted no one was prevented from voting at such election on account of the change of the polling place."

For at least fifteen years prior to 1895 the annual town meetings and elections were held by the people of this township in the truck house in the village of Rose-ville. The truck house becoming unfit for further use, the town meeting and election of 1896 were held in the opera house, located on the same lot and within one hundred feet and in plain sight of the truck house, at which place thereafter such meetings and elections were annually held, up to and including the election on the 3d day of April, 1900. To hold this election void on the ground suggested would be to hold every annual town meeting and town election held in said township from 1875 to 1900 of no effect. We think, by reason of the lapse of time, it must be presumed, from the uniform action of the township officers and the people in holding the town meetings and elections at the truck house, that such place had been regularly fixed by the electors of said town as a place to hold elections and town meetings although no record thereof was preserved in the clerk's office, and the change from the truck house to the opera house was not of such a character as to produce any injurious effects and not sufficient grounds to invalidate the election,— especially so, when it is admitted no one was prevented from voting at such election on account of the same being held at the opera house.

We are of the opinion that said township high school was legally organized, and that as the right of the appellees to hold the office of members of the township board of education depends upon the legality of the organization of the township into a high school district, the circuit court did not err in overruling the demurrer to said plea.

The judgment of the circuit court will therefore be affirmed.  *Judgment affirmed.*