## The People of the State of Illinois ex rel. Charles Agnew, Plaintiff in Error, v. Edward Graham et al., Defendants in Error.

### Gen. No. 5,918.

ELECTIONS, § 134*—*when holding of election for aldermen in one polling place does not invalidate election.* The fact that an election for three aldermen in a city having only three wards was held at a polling place in one ward, which was a short distance from the boundaries of the other wards, *held* not to render the election void under section 4, art. IV, of the Cities and Villages Act, J. & A. ¶ 1323, requiring aldermen to be elected in each ward, where there was a full and fair election, and all the elections had been held at such place for twenty years.

---

*See Illinois Notes Digest, Vols XI to XV, and Cumulative Quarterly, same topic and section number.

Error to the Circuit Court of La Salle county; the Hon. JOE A. DAVIS, Judge, presiding. Heard in this court at the April term, 1914. Affirmed. Opinion filed July 31, 1914.

L. B. OLMSTEAD and BUTTERS & CLARK, for plaintiff in error; GEORGE S. WILEY, of counsel.

FAISSLER, FULTON & ROBERTS and BROWNE & WILEY, for defendants in error.

MR. JUSTICE DIBELL delivered the opinion of the court.

By leave of court, the People, by the State's Attorney of LaSalle County on the relation of Charles Agnew, filed an information against Edward Graham, F. E. Blakeslee and P. J. Cruise, requiring them to show by what warrant they held and exercised the offices of mayor of the city of Earlville and aldermen of said city of Earlville, and the offices of president, secretary and member, respectively, of the Board of Local Improvements of said city of Earlville, which offices said information charged that they had usurped and still do usurp. Respondents filed a plea, setting up their title to said respective offices. A demurrer thereto was overruled. Plaintiff elected to abide by its demurrer, and there was a judgment in bar in favor of respondents. This is a writ of error to review that judgment.

The plea is very lengthy and we deem it unnecessary to set it out in full. As to many of its averments, we think it sufficient to say that it alleged, with sufficient fullness of detail, the existence of said city under the general act for the incorporation of cities; that in the spring of 1911 a primary and thereafter an election were duly called, due notice thereof given and the same duly held; that the respondents duly became candidates for said respective offices and that all the necessary steps were taken to place their names on the

primary ballot and on the official ballot at the election; that they were duly qualified in every respect to be candidates for and to hold said offices; that they were each duly nominated and elected, Graham as mayor and Cruise and Blakeslee as aldermen of the First and Second Wards respectively; that the election was duly canvassed and declared and they duly qualified and entered upon the duties of the offices of mayor and aldermen, and thereafter duly became members of said Board of Local Improvements, and at the time of filing said plea were duly occupying said offices; and that their title to said respective offices is unassailable, unless their election was void by reason of the matters hereinafter stated.

It appears from the plea that the city of Earlville was organized under the general law on February 5, 1887; that on April 4, 1887, by ordinance it was divided into three wards; that the First Ward included that part of the city lying west of the center of Ottawa street and south of the center of Winthrop street and of Winthrop street extended; that the Second Ward included that part of the city lying east of the center of Ottawa street and of Ottawa street extended; that the Third Ward included that part of the city west of Ward Two and north of Ward One; that on the same day, by ordinance, the city provided that the city council should elect three judges of election, one from each of the three wards, and one or more clerks, who should conduct all city elections until their successors were elected, and that the elections should be held at a place in said city to be designated by the city council in a notice published by the city clerk twenty days before the election; that said ordinance provided that a ballot box should be prepared with three apartments, lettered "First Ward," "Second Ward" and "Third Ward," respectively, and that the ballot of each voter should be deposited in the apartment designated for the ward in which he re-

sided, otherwise such ballot should not be counted for alderman; that said ordinances remained in full force from 1887 to the time of filing said plea and had never been repealed or amended; and that the city of Earlville had held and conducted all elections therein from and after its inception in conformity to said ordinances.

The plea further alleged that said primary and said election of 1911 were held at the City Hall in the City of Earlville and that that was the place designated by the city council and had been the place of holding elections in said city for twenty years prior to 1911; that the ballot box used for said primary and election contained three apartments, as required by said ordinance, and that all the voters who voted thereat were male citizens of the United States, who had resided in the State of Illinois one year, in LaSalle county ninety days and in the ward designated on the apartment in the ballot box in which their ballots were deposited thirty days next preceding said primary and election, and were qualified voters of such ward; that each judge of election possessed the other qualifications required by law and had resided for a year next preceding said election in the ward where he resided at the time of said election. The plea further averred that said election was held April 18, 1911, in the engine room of the City Hall in said city; that the polls were open from 8 A. M. until 7 P. M. of said day; that the voters of all three wards voted at said voting place; that the judges and clerks had separate poll books for each ward; that the names of the voters residing in the First Ward were recorded in the poll book for the First Ward, and so of the voters residing in the Second and Third Wards, respectively; that the ballot cast by each voter was deposited by one of the judges in its respective apartment, according to the residence of the voter. The plea further averred: "That there was a large vote cast at said election and a fair expression

of the will of the voters of said city; that no one entitled to vote was deprived of his right to do so by reason of the polling place being situated as aforesaid; that the election was conducted in all respects in the same manner and in the same place as had been the custom and practice in said city for more than twenty years and as provided for by the general ordinance of said city; that said City Hall is centrally and conveniently located for holding such elections in the southwest corner of the Third Ward of said city, which point is not more than sixty feet distant from the northerly boundary line of the Second Ward of said city, and that said City Hall is so located that it is not more than sixty feet distant from the easterly boundary line of the First Ward of said city." By comparing this description of the location of the City Hall, quoted from the plea, with the boundaries of the wards as above stated, it will be seen that the plea contains inconsistent allegations as to the location of the City Hall. Counsel for both parties have orally requested us to treat the plea as if it averred that said City Hall is located in the southeast corner of the Third Ward and not more than sixty feet distant from the northerly boundary line of the First Ward and from the westerly boundary line of the Second Ward of said city. The allegations of the plea being so considered, it will be seen that the election was held in one place in the southeast corner of the Third Ward, not more than sixty feet distant from the First and Second Wards, respectively, and that the elections had all been held at that particular place for the last preceding twenty years. The first question is whether the holding of that election at that place was a compliance with the statute.

Section 4 of article IV of the Cities and Villages Act (J. & A. ¶ 1323) requires that one alderman shall annually be elected "in" each ward as well as "for" each ward. It has, we think, been the universal con-

struction of this language, ever since the Act of 1872 was adopted, that the ward constitutes an election district and that the statute requires the election for an alderman to be held in the ward where he is a candidate. The respondents quote some general language from *Welsh v. Shumway*, 232 Ill. 54, as tending to show that the Legislature intended that the city authorities should establish the city election precincts and fix their boundaries, regardless of the provisions of the General Election Law. While the language there used might be so applied, if not qualified, it was qualified on page 67 of said opinion by these words: "In an incorporated city, for city elections the ward lines must necessarily be considered in forming election districts." We are referred to authorities in other States holding differently, but we are of opinion that in this State the ward lines must be held to be the boundary of an election district, though such district may be divided into more than one precinct where the number of voters is very numerous. Of course, if the city council had not divided the city into wards, it could lawfully hold an election at one place in the city, as held by us in *People v. Becker*, 179 Ill. App. 446, but this city was divided into wards.

The relator contends that as the election for alderman of the First and Second Wards was not held pursuant to law, respondents were not lawfully elected and were not entitled to hold their offices. We are cited to numerous cases in Texas, Massachusetts and elsewhere, where an election held outside the boundaries of the election district has been sustained, but we deem it unnecessary to go outside of this State for authority. In *Choisser v. York*, 211 Ill. 56, on page 63, the general principle prevailing in this State is stated, viz.: that, if the intention of the voter can be fairly ascertained, effect will be given to that intention, and the voter should not be disfranchised through mere inadvertence, mistake or ignorance. At that

time the general statute relating to elections (section 30, J. & A. ¶ 4755) required polling places to have an entrance upon a highway or public street. In one of the election precincts involved in the case just cited, the polling place was established in a room not opening upon a public thoroughfare. It was established by the proper authorities and had been the authorized and usual voting place from 1885 to that election in 1902. It was held that the election was not void by reason of the location and situation of the building in which it was held. In *People v. Brown,* 189 Ill. 619, which was quo warranto to test the title of the appellees to certain offices, it was averred that from 1880 to 1895 a certain "truck house" had been the place where elections were held; that that place became unsuitable and the board of supervisors in 1896 changed the voting place to the opera house, situated on the same lot about one hundred feet away, and that elections had been held at said opera house and the voters recognized and accepted it as the voting place up to 1890, when the election in question took place. The board of supervisors had in fact no power to make said change or to fix the place for holding said election. The Court said: "Where there has been a custom, acquiesced in for years, to hold an election at a particular place, and the people suppose that said place is the correct one, or some change not calculated to produce any injurious effect has been made in the place of holding elections, the holding of an election at such place is not sufficient to avoid the election." The Court there cites *Steele v. Calhoun,* 61 Miss. 556, where no place to hold an election had been fixed by the authorities, but the voters by common consent voted where the election had usually been held, and this was held valid. The Court therefore held in *People v. Brown, supra,* that the change from the truck house to the opera house should not invalidate the election, as it was admitted that no one was prevented from voting at such election on account of its being held at the opera house. *Si-*

*mons v. People,* 119 Ill. 617, was quo warranto to test the title of Simons to an office. At one of the polling places there in question, the place for voting was changed on the morning of the election from "Kuhn's Hall" to "Kuhn's real estate office," two hundred feet distant in plain sight with open space between. It was admitted that no one was prevented from voting at such election on account of such change. It was held that this did not invalidate the election. Another polling place was appointed at "Ball's store" and was changed from that place across the railroad to "Fox's store." It was averred that no voter in the district was ignorant of the change or failed to vote at such election by reason of the change. The election was full and fair. No injurious effects followed from the change. It was held that this change would not invalidate an election otherwise full, free and fair, and that public policy forbade the adoption of a rule that would defeat the expression of the popular rule at elections.

From the foregoing statement it appears that it was only sixty feet across Ottawa street from the place where the election was held to the Second Ward, and only sixty feet across Winthrop street to the First Ward, and that the intervening space was in each case a public street and must have been open, and that all the elections had been held at this place for twenty years, so that the place of holding elections must have been known to every elector; that there was a large vote cast and a fair expression of the will of the voters, and that no one was deprived of his right to vote by reason of the location of the polling place, and that the place where it was held was central and convenient. The electors had either to vote at the place appointed or to refrain from voting. We are of opinion that under such circumstances the failure of the city council to establish three polling places and select

three judges for each should not be permitted to defeat the will of the voters, expressed at a full and fair election.

The judgment is therefore affirmed.

*Affirmed.*