## Marshall Field & Company, Defendant in Error, v. Isabelle Thompson, Plaintiff in Error.

### Gen. No. 7,460.

1. STATUTES—*repeal of earlier by later.* Later statutes do not
repeal earlier statutes unless the inconsistency is so great that
they cannot both stand.

2. STATUTES—*repeal of special statute by general.* A general
statute does not repeal a special statute by implication unless they
are so inconsistent that they cannot both stand.

3. STATUTES—*construction against repeal by implication.* As
regards repeal by implication, it is the duty of the court to so
construe statutes that they may both stand.

4. ATTACHMENT—*provision as to publication of notice not re-
pealed.* Notices Act of 1897, as amended in 1917, did not repeal
by implication Attachment Act, ch. 11, sec. 22, Cahill's St. ch. 11,
22, relating to notice by publication.

5. ATTACHMENT—*notice by publication.* Under Attachment Act, ch. 11, sec. 22, Cahill's St. ch. 11, ¶ 22, only three weeks' notice by publication is necessary, notwithstanding Notices Act, ¶ 9, Cahill's St. ch. 100, ¶ 9.

Error by defendant to the County Court of Kendall county; the Hon. ARTHUR G. LARSON, Judge, presiding. Heard in this court at the April term, 1925. Affirmed. Opinion filed August 3, 1925.

HAYES, MUNTS & YOUNG, for plaintiff in error.

JOHNSON & CARR and ROBERT C. CARR, for defendant in error.

MR. PRESIDING JUSTICE JONES delivered the opinion of the court.

This is an attachment suit by Marshall Field & Company, defendant in error, in the county court of Kendall county, against Isabelle Thompson, plaintiff in error. The defendant in error, at the December term, 1922, of that court, recovered a judgment by default on January 12, 1923, against plaintiff in error for $225.79, upon publication of notice for three weeks, to wit: on November 29, December 6 and December 13, 1922. An execution was issued and certain land belonging to plaintiff in error was sold thereunder.

The only question in this case is with reference to the sufficiency of the service. Plaintiff in error claims that the court had no jurisdiction, for the reason that four weeks' publication was necessary and only three weeks' publication was given. It is further contended that only twelve days and not thirty days intervened between the first publication and the first day of the term of court at which judgment was rendered. It is claimed that the "Notices Act" of 1897 as amended in 1917, repealed by implication section 22, chapter 11 of the Attachment Act [Cahill's St. ch. 11, ¶ 22], and that publication notices are controlled by the Notices Act and not by the Attachment Act. The Attachment Act

provides for only three weeks' notice by publication, while paragraph 9 of the Notices Act [Cahill's St. ch. 100, ¶ 9] provides that: "In all suits at law or in chancery, or in probate matters * * * it shall be sufficient publication if such notice shall be published at least once in each week for four successive weeks, the first publication to be at least thirty days prior to the first day of the term." We are aware that *McAnsh Dwyer & Co. v. Moore Furniture Co.*, 178 Ill. App. 562, apparently supports plaintiff in error's contention, but the court in that case did not base its decision on the question of jurisdiction, inasmuch as the appellee, defendant below, waived that question by appearance, joining issue and participating in the trial; and the case was decided upon another question altogether.

The whole subject of attachment is governed by chapter 11 of the statute, which is complete within itself and provides all of the steps necessary in obtaining jurisdiction and judgment in attachment, including service by publication in case there can be no personal service. It is a well-known rule of law that later statutes do not repeal earlier statutes, nor does a general statute repeal a special statute, unless the inconsistency is so great they cannot both stand. If possible, it is the duty of the court to so construe such statutes that they may both stand. Repeals by implication are not favored and a later statute will not be held to repeal a former one, unless they are irreconcilable. The presumption always obtains that the legislature by a general law does not intend to abrogate the provisions of a prior act relating to a special subject, and that such repeal will only be effected when there are no negative words, unless it is impossible for the two acts to stand together. (*People v. Brown*, 189 Ill. 619, 622.) It is the duty of the courts to construe them so as to avoid repeal, if such a construction can be given, and a statute will never be held to be repealed by implication if it can be

avoided by any reasonable hypothesis. It is also the rule that a subsequent law which is general does not abrogate or repeal a former one which is special and intended to operate upon a particular subject, and that if the later statute does not contain negative words it will not repeal the particular provisions of the special law on the same subject, unless it is impossible that both should be enforced. (*Village of Ridgway v. Gallatin County*, 181 Ill. 521, and cases cited.) Paragraph 9 of the Notices Act contains no negative words and no reason is perceived why the two statutes cannot be enforced together.

The history of the legislation in connection with service by publication throws some light upon the intention of the legislature in enacting paragraph 9 of the Notices Act, its amendment and its purpose. As originally enacted it provided that: "It shall be sufficient publication if such notice shall be published for at least four (4) successive weeks, the first publication to be at least thirty (30) days next prior to the first day of the term of such court," etc. Since its enactment it has been amended only once. In 1917 it was amended to read: "It shall be sufficient publication if such notice shall be published at least once in each week for four successive weeks," etc., and the word "next" immediately before the word "prior" was omitted.

Up to 1917, section 13 of the Chancery Act of 1872 provided for publication of notice at least once in each week for four successive weeks and required forty days to intervene between the first publication and the first day of the term. At the 1917 session of the legislature, the Act was amended to require only thirty days to intervene between the first publication and the first day of the term. (Laws 1917, p. 643.) [Cahill's St. ch. 22, ¶ 13.]

Section 105 of the Administration Act of 1872, relating to sale of real estate to pay debts of a decedent, provided that notices be published once in each week

for four successive weeks, and that forty days shall intervene between the first publication and the first day of the term. In 1917 this section was amended so as to require only thirty days to intervene between the first publication and the first day of the term. [Cahill's St. ch. 3, ¶ 106.]

It will be observed that the amendment of 1917 to paragraph 9 of the Notices Act changed the wording of the Act of 1897 from "for at least four (4) successive weeks" to "at least once in each week for four successive weeks" making it conform to the wording of section 105 of the Administration Act and section 13 of the Chancery Act; and at the same session of the legislature both of the latter acts were amended so as to make the period intervening between the first publication of notice and the first day of the term, as provided by these acts, conform to the provisions of paragraph 9 of the Notices Act.

While it may be argued that a proceeding to sell real estate to pay debts of a decedent is not a suit at law nor a chancery suit, but is a statutory proceeding, yet section 101 of the same Act [Cahill's St. ch. 3, ¶ 102] provides that the practice shall be the same as in cases of chancery, and it is apparent that the legislature had this in mind. Under the circumstances, if the legislature intended paragraph 9 of the Notices Act to apply to attachment proceedings, it is singular that section 22 of the Attachment Act was not given some attention at the same session of the legislature, when the Administration Act, the Chancery Act and the Notices Act were all amended making them uniform as to length of time required to intervene between the first publication of notice and the first day of the term, and when the wording of each of the acts was made the same as to the manner of publication, i. e., once in each week for four successive weeks.

We do not think that the act of 1897 as originally enacted or as amended in 1917 applied to proceedings in attachment, nor that the legislature intended that

it should. Section 26 of the Attachment Act [Cahill's St. ch. 11, ¶ 26] provides that: "The practice and pleadings in attachments suits, except as otherwise provided in this act, shall conform as nearly as may be to the practice and pleadings in other suits at law." The Attachment Act contains an express provision relating to the subject of notice and such provision must therefore obtain for that reason, as well as because of the rule that a general statute will not repeal a special statute, unless the inconsistency between them is so great that they cannot both stand. We feel there is no inconsistency between the two acts and that both of them should stand. Therefore, three weeks' publication under section 22 of the Attachment Act is sufficient.

In *Lawver v. Langhans,* 85 Ill. 138, it is said: "The statute does not require that the three publications shall be made  *  *  *  a certain number of days before the term commenced  *  *  *. We perceive nothing to prevent a part of the publications being made before the term begins and a part afterwards. *  *  *  The Practice Act, in regard to service of process and filing of declarations in actions at law, was not intended to embrace an action in attachment." (See also, *Kirk v. Elmer H. Dearth Agency,* 171 Ill. 207.) With these cases before us, we must conclude that the Notices Act, as well as the Practice Act, has no application to attachment suits; otherwise all publications should be made prior to the commencement of the term, and section 23 of the Attachment Act [Cahill's St. ch. 11, ¶ 23], providing that no default shall be entered until the expiration of ten days after the last publication, would be virtually meaningless.

The default was not taken and the judgment was not entered until more than ten days after the last publication, so that, under section 23 of the Attachment Act, the court had jurisdiction to render the judgment it did. The judgment is therefore affirmed.

*Judgment affirmed.*