## Will May v. The State.

### No. 2092. Decided May 15, 1901.

**1.—Illegal Voting—Indictment—Allegation as to Voting Place.**

In an indictment for illegal voting, where the indictment alleged, that the election was authorized by law at Prairie Hill schoolhouse, in voting precinct No. 10, this was a sufficient designation of the voting place without further alleging, as a fact, that the commissioners court had designated Prairie Hill schoolhouse as the voting place in said precinct.

**2.—Same—Allegation as to the Character of the Election.**

An indictment for illegal voting is sufficient to designate the character of the election, which alleges, said election was then and there held "for the purpose of electing various county and precinct officers of Texas," and it is not necessary to further allege, that defendant voted for or against any particular officer, or officers to be chosen, or for or against any particular measure which was to be voted upon. at said election.

**3.—Same—Gist of the Offense.**

In a prosecution for illegal voting, the gist of the offense is, that defendant voted at a certain legal election,—not that he voted for or against any particular men or measure.

**4.—Same—Evidence as to Voting Place Where Election Is Held.**

On a prosecution for illegal voting, if it be shown that the place where the election was held was the usual voting place in the precinct, and had been so used by the voters, the election would be a legal one if no other place had ever been designated by the commissioners court as the place for holding elections; and the illegal voting at such place would render the party so voting liable to punishment under the law for that offense.

**5.—Same—Evidence.**

On a trial for illegal voting, it was competent to permit a witness to testify as to the name of defendant's mother before she married.

**6.—Same—Age of Defendant.**

On a prosecution for illegal voting, where the charge was that defendant was under the age of 21 years when he voted, the question is one for the jury to determine from the evidence.

Appeal from the District Court of Bosque.   Tried below before Hon. William Poindexter.

Appeal from a conviction of illegal voting; penalty, two years confinement in the penitentiary.

Defendant filed a motion to quash, and also a motion in arrest of judgment, both based upon the alleged insufficiency · of the indictment. The exceptions to the sufficiency of the indictment are set forth in the opinion.   Both motions were overruled.

*Lockett & Cureton,* for appellant.—Our statute requires the commissioners court to designate a place within the voting precinct at which the election shall be held.   Sayles' New Stats., art. 1705.

"As a rule the place of holding an election must be fixed by proper authority before a valid election can be held."   10 Am. and Eng. Enc. of Law, 2 ed., p. 684; Williams v. Potter, 114 Ill., 628; Williams v. Potter, 3 N. E. Rep., 729; Snowball v. People, 147 Ill., 260.

"A fixed place is as absolutely a requisite, according to the election laws, as is the time of voting.   The holding of elections at the places fixed by law is not directory; it is mandatory."   Melvin's case, 68 Pa. St., 333; 10 Am. and Eng. Enc. of Law, 2d ed., p. 687, note 4; Williams v. Potter, 114 Ill., 628; 3 N. E. Rep., 729; People v. Willer, 70 Am. Dec., 755.

The verdict of the jury was contrary to the law and the evidence in this:   1.   There was no evidence that defendant knew he was under 21 years of age when he voted.   2. There was no evidence before the jury that defendant voted at said election for any officer, or for or against any measure or proposition.

Defendant raised the question of the insufficiency of the evidence in his motion for a new trial.   The evidence of the State showed by three witnesses, Bennett, Mullinax, and Menifee, that defendant had the appearance of being 18 years of age.   Witness Menifee stated he might be mistaken in proximating defendant's age.   Defendant's father testified that he did not remember defendant's age, but he had been shaving for five or six years and was married.   The license from the records of Hill County showed that G. W. May and one A. J. Piper were married in 1879, but no notice of that is brought home to defendant, and it is not shown that was not a second marriage, and this is all the evidence of defendant's age or of his knowledge of his age, except his declaration when he voted that he was 21 years of age.   The testimony shows that defendant handed a supposed ticket to the election officers.   This is not sufficient to meet the requirements of the statute.   The State must show that he voted for an officer, or for or against some measure or proposition, before he can be convicted of a crime.   Willson's Crim. Stats., art. 171.

If our statute is mandatory as to the selection of a voting place, then our exceptions to the indictment were well taken.   No authority to designate a place is conferred on any person or officer except on the commissioners court, and the withholding of such authority is very strong

evidence that the Legislature intended to make this statute mandatory. If other parties can select or change the place, who is it? Can the presiding officer? If so, it is placed in one man's power to arbitrarily fix the place to suit his own convenience and that of his party. When shall he fix the place? There is absolutely no limit on him. The court must do it at the first regular term in February, but no limit is placed on any other person. We submit the State's construction would lead to the rankest kind of fraud and would defeat the very purpose of the Legislature, in selecting a time and place to hold the election, that all voters should know when and where to vote; therefore the authority is only conferred on the commissioners court.

We submit the indictment is fatally defective in not alleging that defendant voted for some person. If the Legislature had thought the language that he "voted" was sufficient, they would have stopped at the use of that word. Judge White is evidently correct when in his form he used this language: "Did then and there unlawfully, willfully, and corruptly vote, and cast his vote at said election for all the officers," etc. This is clear, positive, and covers the entire language of the statute, and leaves nothing to intendment, inference, or argument. When you say a man voted, in the ordinary use of language, we may infer what is meant; but that is not the rule in criminal pleading. Nothing must be left to intendment, argument or construction, but the idea must be clearly expressed. In this indictment, from the use of the language, you can not tell whether the defendant voted for a person or for or against a proposition or measure.

*Rob't A. John,* Assistant Attorney-General, for the State.—Appellant made a motion to quash the indictment, and also to arrest the judgment, claiming the indictment is defective in that it does not allege appellant voted for any officer to be chosen; it does not allege that he knew he was under 21 years; and the motion to quash further complains the indictment is defective because it is not alleged that the Prairie Hill schoolhouse, where the election was held, had been legally selected by the Commissioners Court of Bosque County as the place for said election. Nor does it allege that appellant resided in said voting precinct No. 10, where he is charged to have illegally voted.

. The State submits the indictment is good. This is in exact accord with the form laid down by Judge Wilson, and is in substantial compliance with the form prescribed by Judge White. It alleges every element contained in the statute, and is certainly specific to put appellant upon notice of what he is to be tried; and the specific transaction is alleged, that is to say, that he illegally voted knowing he was under the age of 21 years, at a certain particular time, to wit, the 8th day of November, 1898, and at a particular place, to wit, Prairie Hill schoolhouse, in election precinct No. 10 of Bosque County, Texas. It states the purpose of said election, that is, it was held for the purpose of electing State and county officers. This is sufficient. Willson Crim. Forms

No. 92; White Ann. P. C., art, 171, sec. 256; Gallagher v. State, 10 Texas Crim. App., 469; Thompson v. State, 26 Texas Crim. App., 94.

The record contains several bills of exception. Bill No. 1 complains of the court permitting John Bennett to testify that Mrs. G. W. May, mother of appellant, had told him that her name was Piper before she married G. W. May, the father of appellant. The statement of facts shows this witness had known the parties since 1892, and therefore the declarations so made were anterior to this indictment. The objection is that the evidence is hearsay. The State submits that hearsay evidence is admissible to prove birth, marriage, pedigree, or name. This is elementary.

Appellant's second, third and fourth bills all complain that the election is irregular, and therefore void, and defendant is not guilty of illegally voting at the same, because the Commissioners Court had not specifically designated, by article 1705 of the Revised Civil Statutes, Prairie Hill school as the place for holding the election in said election precinct No. 10; and further objects that the same can not be proved by parol evidence. The judge qualifies this bill by reference to the statement of facts, which shows that there had never been a change in the place where the election was usually held, yet it is conceded it is not shown that the Commissioners Court by a formal order fixed Prairie Hill schoolhouse as the place for holding the election; but the election officer testified that he held the election at that place because it was the usual place where elections were held in that precinct. Judge Roberts in McKinney v. O'Connor, 26 Texas, 11, holds as follows: "Such rules describe the manner in which the qualified electors shall hold the election at the time and place designated, and thus prescribing the manner in which their act when done shall be authenticated so as to import verity on their face as true. Irregularities in their observances will not vitiate the election, unless they be such that the true result of the ballot can not be arrived at with reasonable certainty. The ultimate test of the validity of an election is involved in the questions: Did the qualified voters at the time and place designated act in concert, either active or by acquiescence, hold an election and cast their votes in the ballot box, and has it been done in a manner sufficiently conformable to the directions of the law as that the true result can be arrived at with reasonable certainty?"

The fact that the place where the election was held was the usual place for holding the election, the mere absence of an order of the Commissioners Court specifically designating it as the place, would not render the election invalid, especially if the questions asked by Judge Roberts in the opinion, supra, can be answered in the affirmative. This has been sustained in other jurisdictions. 10 Am. and Eng. Enc. of Law, p. 685; Delano v. Morgan, 2 Bart. El. Cas., 168; State v. Calhoun, 61 Miss., 556.

The authority cited in McCreary on Elections, section 118, is to be distinguished from the case at bar because that is where the usual place for holding the election has been changed, and the presumption arises

that the voter was deceived by the change. The New York case cited in McCreary, which the Supreme Court sustained (see section 125), is nearer in consonance with the case at bar.

HENDERSON, JUDGE.—Appellant was convicted of illegal voting, and his punishment assessed at two years confinement in the penitentiary; hence this appeal.

Error is assigned on account of the refusal of the court to quash the indictment. Appellant insists the indictment is defective on two grounds: (1) Because it nowhere alleges that the Prairie Hill schoolhouse, where it is alleged defendant illegally voted, was the place selected by the Commissioners Court of Bosque County, Texas, for the holding of the election at said precinct; (2) because it is nowhere alleged that appellant voted for any men or measures at said election. With reference to the first proposition, we would observe that it is alleged in said indictment that "an election was then and there held, and authorized by law, at Prairie Hill schoolhouse, in voting precinct No. 10." It occurs to us that it was not necessary to state as a fact that the Commissioners Court had designated Prairie Hill schoolhouse as a voting place in said precinct, the allegation that the election was authorized by law at Prairie Hill schoolhouse being sufficient. This averment would authorize proof of the facts which would render an election at said place a legal election. With reference to the second contention,—that the indictment should have charged that appellant voted for or against some particular officer to be chosen, or for or against some particular measure,—we do not think this is well taken. Gallagher v. State, 10 Texas Criminal Appeals, 470, cited by appellant, as we understand it, is authority against him. Of course, it will not be seriously contended that the form laid down by Judge White as an indictment for this character of offense would be authority. The charge here is that appellant voted at a certain election, "which said election was then and there held for the purpose of electing various State, county, and precinct officers of Texas." This not only designates the character of the election as being a general election, but charges that the same was held for the purpose of choosing State, county, and precinct officers of Texas. This is a sufficient description and averment as to the character of election. The gist of appellant's offense is that he voted at a certain legal election, not that he voted for or against any particular men, or for or against any particular measure. Indeed, we do not understand how the pleader could procure this information. The ballot is intended to be secret, and only under certain conditions can any inquiry be made which would involve the opening of the ballot boxes.

On the trial appellant objected to all oral evidence showing the election was held at Prairie Hill schoolhouse, in precinct No. 10, on the ground that the Commissioners Court, when they made precinct No. 10 a voting precinct of Bosque County, failed to designate any place at which the said election should be held in said precinct, and no authority

was conferred upon any persons or other course prescribed to select a place in which said election should be held. The order of the court designating the precinct, describing it by metes and bounds, was also objected to, because it did not contain any order appointing or designating Prairie Hill schoolhouse as a voting place in said precinct. The judge explains these bills of exception by stating "that Prairie Hill schoolhouse, named, was within voting precinct No. 10, and was the usual place of voting in said precinct, as will appear from the statement of facts." This brings up the important question in this case. Appellant contends that article 1705, Revised Civil Statutes, is mandatory, requiring the commissioners court of each county to designate one place in each election precinct at which elections shall be held, and that this must be shown by the record. We quote from said article as follows: "The commissioners court of each county, at their first regular term in each year, if they deem it necessary, may divide their respective justices' precincts into as many election precincts as they shall deem expedient, which shall all be numbered, and no two shall be designated by the same number. No election precinct shall be formed out of any two or more justices' precincts, and they shall designate one place in each of such election precincts at which elections shall be held," etc. It will be observed that this section does not require the commissioners court at their first term in each year to lay off voting precincts and to designate voting places, but this is left optional with the court by the use of the term "if they deem it necessary." So it would follow, if the commissioners court at some previous term had designated the precinct and place therein at which to hold the election, that same would continue in force until changed. We think it would equally follow, if the commissioners court at some preceding term had designated a place in a certain precinct, and if at a subsequent term in outlining precincts they said nothing about the place,—made no change,—that the place formerly selected would continue to be the place at which to hold the election. It appears from the records of Bosque County that it was divided into twenty-one voting precincts. These were constituted in 1896. In 1898 the only change made in the description of the precincts was in two precincts, to wit, Meridian and Cedron, which are not material to this discussion. The field notes of Childers Creek voting precinct No. 10, which is involved in this prosecution, was mapped out in 1896, but it does not appear in the order made at that time Prairie Hill schoolhouse was designated as the voting place. For aught that appears, it may have been previously mapped out, and the Prairie Hill schoolhouse may have been designated. In the absence of proof that the records fail to show it was designated as a voting place for that precinct, we might indulge the presumption that at some previous time it had been designated by the commissioners court, and in that event it would continue to be the voting place in the precinct until changed by the commissioners court. However, for the purpose of meeting this question, we will concede the commissioners court had never designated Prairie Hill

schoolhouse as the place in said precinct in which elections should be held. If it is shown that such place was the usual voting place in said precinct, and was so used by the voters, no other place being designated by the commissioners court, an election held at said place would be a legal election. As a general proposition, we are aware that the time and place authorized by law is essential in order to constitute a legal election; that is, if an election is held at some other place or at some other time than that authorized by law, such election is void. And it is said, as a general rule, that an election held at a place not authorized by law is absolutely void, without proof of any fraud or injury. 10 Am. and Eng. Enc. of Law, p. 684, and authorities there cited. In a number of cases elections have been held valid where a change was made as to the place of holding the election without the authority of the tribunal authorized to designate the place. These changes, however, as to the location, were slight changes, and were rendered necessary by some supervening cause. Ex parte Segars, 32 Texas Crim. Rep., 553; Ex parte White, 33 Texas Crim. Rep., 594; Farrington v. Turner, 53 Mich., 27, 18 N. W. Rep., 544; Wakefield v. Patterson, 25 Kan., 709; Delano v. Morgan, 2 Bart. El Cas., 168; State v. Burbridge, 24 Fla., 112, 3 So. Rep., 869; Steele v. Calhoun, 61 Miss., 556; Dale v. Irwin, 78 Ill., 170. Most of the cases cited, as is stated above, were cases where the proper authority had named or designated some place, and voters by common consent changed the place. Here it does not appear that the proper authority, to wit, the commissioners court, had ever named any place, but by common consent the voters had for a number of years used Prairie Hill schoolhouse. Indeed, in the language of one witness, "Prairie Hill schoolhouse, where the election was held, has always been the usual place of holding elections for Childers Creek box." So, if it be conceded that the voters may make a change in the voting precinct under circumstances of necessity, by a stronger reason it would appear they could designate some place when none had been named by the commissioners court. This is what was done in Delano v. Morgan, supra; that is, no voting place had ever been fixed by the act but the proof showed the elections had been held in the particular place for eighteen years, and in such case it was held the election was legal. In Steele v. Calhoun, supra, it appeared the Dogwood Flat church had never been designated by any competent authority as the place for holding the election in that precinct, but it was used as the voting place by the voters for a number of years. Although the house was removed some three-fourths of a mile from its original site, it was still called by its former name, and the election held there after its change was held valid. These cases proceed on the theory that the voters are the final arbiters in such matters, and if no place has been named, and by common consent some particular place is used, and all have a fair opportunity of depositing their ballots, no voter being deceived by the location or change of the voting place, the election will be held valid. In this particular case no fraud whatever was shown or attempted to be shown.

The place was situated within the voting precinct, and by common consent had been used by the voters for a number of years. Certainly, under the circumstances, in a contested election case it could not be seriously insisted that the vote of said box should be thrown out because the place, Prairie Hill schoolhouse, had never been designated by the Commissioners Court as a place for holding an election in said precinct. If the Commissioners Court had designated some other place, and without any necessity, real or apparent, the voters had changed the place, another question would arise. But, under the circumstances as disclosed by this record, we hold the election held at Prairie Hill schoolhouse for precinct No. 10 of Bosque County was a legal and valid election.

We do not believe the court erred in admitting testimony of the witness Bennett as to the name of defendant's mother before she married. He had known her is Piper, and whether he was introduced to her by that name, or whether she told him that such was her name would make no difference. As to the age of defendant, that was a matter for the jury, and we think the evidence is sufficient to justify the jury believing he was under 21 years of age when he voted.

The judgment is affirmed.

*Affirmed.*