## The People of the State of Illinois, Defendant in Error, v. Reinholdt Becker, Plaintiff in Error.

### Gen. No. 5,709.

1. ELECTIONS—*ignorance of law.* The rule, that ignorance of the law excuses no man, applies with all its force to cases of violation of election laws, and where a resident of one county votes in another county, the question of an honest mistake of his right so to vote cannot be submitted to the jury.

2. ELECTIONS—*information for illegal voting.* The averment in an information that "there was a general election of city officers of said city, had and held under the laws of this state," may be taken as an averment that everything precedent to and requisite for a legal election, had been performed.

3. ELECTIONS—*information for illegal voting.* The charge in an information that defendant did wilfully and unlawfully vote at said election, well knowing himself not to be a qualified voter under the laws of this state, apprized defendant with reasonable certainty of the nature of the accusation.

Error to the County Court of Lake county; the Hon. LOUIS M. RECKHOW, Judge, presiding. Heard in this court at the October term, 1912. Affirmed. Opinion filed April 8, 1913.

C. P. BARNES and G. W. FIELD, for plaintiff in error.

RALPH J. DADY, for defendant in error; COOKE, POPE & POPE and PAUL MACGUFFIN, of counsel.

MR. JUSTICE CARNES delivered the opinion of the court.

Plaintiff in error was tried in the County Court of Lake county on an information charging him with voting at the city election of Zion City, there held April 18, 1911, when he was not a resident of that city or county. A jury trial resulted in his conviction and he was sentenced to pay a fine of $250 and confinement in the county jail for ten days. It is not claimed that plaintiff in error was at that time a resident of said county or city. He testified in his own behalf and

stated in substance that he was twenty-eight years old
and resided at No. 1507 South Honore street in the
city of Chicago, where he had removed the last June
or July from the premises next door; that he had been
married three years and had one child; that he was
born in Chicago and had lived there all his life; never
resided in Zion City and never intended to reside there,
but that he was advised some time before said April
election by his brother and a man named Friend, who
lived in Zion City, that he could legally vote in Zion
City if he would visit there more than ninety days be-
fore the election and declare his intention to make that
place his home, and afterwards make a few visits there
before the date of the election; that in accordance with
this advice he did go to Zion City, make such declara-
tion to the hotel keeper and visit there two or three
times, and on the day of election presented himself to
the polls and offered to vote, that his vote was chal-
lenged and he then signed and presented an affidavit
to the election officers and was permitted to and did
vote at the election. He says he had no intention of
making Zion City his home at the time he made the
declaration, but believed that he, a resident of Chicago,
Cook county, Illinois, had acquired the legal right to
vote in Zion City, Lake county, Illinois, by simply mak-
ing such declaration and such visits.

The theory of the defense is that the trial resolved
itself into an inquiry as to the condition of plaintiff in
error's mind at the time he voted, and that if he was
honestly mistaken about the law he should be acquitted.
The court submitted that issue to the jury.

It is urged that the information is bad. It consists
of four counts. The first count is as follows: "Now
on this day comes into open court, in his own proper
person, Ralph J. Dady, State's Attorney within and
for the said County of Lake, in the State of Illinois, in
the name and by the authority of the People of the
State of Illinois, and prosecutes in this behalf for and
in behalf of said people and informs the court that

on the eighteenth day of April in the year of our Lord One Thousand Nine Hundred and Eleven, said day being then and there the third Tuesday in April in the year of our Lord One Thousand Nine Hundred and Eleven, there was then and there had and held in the City of Zion, in the County of Lake aforesaid, a general election for the election of city officers of said City of Zion, to-wit: for the election of a mayor of said City of Zion, a city attorney of said City of Zion, a city treasurer of said city of Zion, a city Clerk of said City of Zion, and five aldermen of said City of Zion; that the said election was then and there duly, and in due form of law, had and held under and by virtue of the laws of the State of Illinois, that said city of Zion was then and there at the time said election was so had and held as aforesaid, an incorporated city duly and in due form of law incorporated under and by virtue of the laws of the State of Illinois; that on the day and year last aforesaid and at the time said election was so then and there had and held in said city of Zion, the said City of Zion did not then and there wholly include within its corporate limits any town, and did not then and there wholly include within its corporate limits any towns; that on the day and year last aforesaid in the county aforesaid, one Reinholdt Becker late of said County of Lake, did then and there wilfully and unlawfully vote at said election, he, the said Reinholdt Becker, not then and there at the time he so voted at said election being a qualified voter at said election for the reason that at the time said election was so then and there had and held in said city of Zion, on the day and year last aforesaid, he, the said Reinholdt Becker, had not had any permanent abode in said city of Zion for thirty days next preceding said election, all of which he, the said Reinholdt Becker, did then and there, at the time he so voted at said election, well know, and he did then and there at the time he so voted at said election well know himself not to be a qualified voter under the laws of the State of Illi-

nois, at said election, contrary to the form of the statute in such case made and provided and against the peace and dignity of the same People of the State of Illinois.'' The second count is the same, except there is substituted for the words "permanent abode" the words "legal residence." The third is the same except there is substituted for the words "in said City of Zion for thirty days next preceding said election" the words "in said County of Lake for ninety days next preceding said election.'' The fourth is the same as the first, except there is substituted for the words "permanent abode in said City of Zion for thirty days next preceding said election" the words "legal residence in said County of Lake for ninety days next preceding said election.'' It is argued that the information is bad in not averring notice of said election; the voting by ballot; that the election was held in accordance with the Australian ballot law; the place where said election was held; that the city council fixed upon a place to hold the same; that the city council appointed judges or clerks to conduct the same, and in being silent as to wards and voting precincts.

In Johnson v. People, 94 Ill. 505, the indictment contained the allegation ''That there was a certain election for trustees and village clerk for the village of Gibson, called and held in pursuance of law therein,'' and it was held equivalent to an averment that the election board was legally constituted; also the averment ''that J. B. Goshorn had full power and authority to administer the oath as judge of the election'' was held to amount to an allegation that the election board was legally organized, because otherwise he would not have been a judge of the election and would not have had such power and authority. It is averred in the information here that''There was a general election for the election of city officers of said City of Zion   *   *   *   had and held under and by virtue of the laws of the State of Illinois.'' ·Following the reasoning in the Johnson case, *supra,* that may be taken as an aver-

ment that everything precedent requisite to a legal election had been done and performed. It is averred that plaintiff in error did "wilfully and unlawfully vote at said election * * * well knowing himself not to be a qualified voter under the laws of the State of Illinois at said election." That may be taken as an averment that he voted at the place and in the manner designated by law. The averment that he was not a resident of the city of Zion was certainly equivalent to saying he was not a resident of any part thereof. It was held in Brennan v. People, 113 Ill. App. 361, that the charge in the indictment that one "falsely personated another and voted in his name is to charge, not a legal result, but a fact capable of being 'easily understood' by everybody." The information apprised plaintiff in error with reasonable certainty of the nature of the accusation against him so that he had ample opportunity to prepare his defense. The cases of State v. Bailey, 21 Me. 62; State v. Custer, 28 R. I. 222; State v. Lockbaum, 38 Conn. 400; State v. Marshall, 45 N. H. 281; State v. Boynton, 56 Me. 512; State v. Douglas, 7 Iowa 412; May v. State, 43 Tex. Cr. Rep. 54; Gallagher v. State, 10 Tex. Cr. App. 469; Wharton's Crim. Law (11th Ed.) vol. 3, p. 2336; McClain on Crim. Law, vol. 2, sec. 942, are authorities sustaining this conclusion, as is also the text and notes in 15 Cyc. 451. We conclude the information was sufficient.

The proof shows that there was only one voting place, and all the city officers, including aldermen, were there voted for by all the voters, without distinction as to wards. The city of Zion was incorporated as a city in April, 1902. Its population shown by the Federal census of 1910 entitled it to eight aldermen, and it should have been divided into four wards if the provisions of chapter 24 of our Revised Statutes had been complied with. The reason for holding the election in this unusual way is left to conjecture. We are favored with no citation of authority or argument on that feat-

ure of the case. It may be that the city has never been
divided into wards as provided in section 4, art. IV,
of the statute and that successive elections have been
held in the manner provided by the statute for the first
election after the organization of a city. The record
shows that the election of 1910, next preceding the
election in question was so held. It may be that the
city council first elected, failed to divide the city into
wards because it could not agree or because of neg-
ligence or carelessness, and that succeeding councils
have so failed. We presume that such failure would
not make void the city elections, and deprive the voters
of their right of suffrage and leave the city without
officers authorized to transact its business.

We find from the record before us that the election
in question was a valid election as distinguished from
a void election.

It is argued that there were many errors in the con-
duct of the trial. There was no real question before
the jury except the condition of the defendant's mind
at the time he voted. In questions arising on the offer
and introduction of evidence and the action of the
court in giving and refusing instructions much depends
upon whether there was any real issue in dispute. If
we assume that a nonresident of a city or county, with
no question in his own mind as to his place of resi-
dence, and no circumstances surrounding him that
would raise a question in any reasonable mind about
his place of residence, can go into that city or county
and vote at an election and defend on the ground that
he honestly believed that he had a right to vote there,
then there was in this case an issue, but if we assume
that such a defense should not be permitted, then there
was no real controverted issue presented to the jury.
We do not find that this question has been decided in
this state, but we are of the opinion that the rule that
ignorance of the law excuses no man applies with all
its force to cases of the violation of the election laws;
that if the voter is aware of a state of facts which dis-

qualify him under the law and is ignorant of the law, he may be convicted of the crime of illegal voting. McCrary on Election, sec. 592. It is said in 15 Cyc. 442: "A guilty intent is a necessary ingredient of the crime of illegal voting, and a person to come within the statute must know at the time of his voting that he is not a qualified voter and that he is doing or attempting to do an unlawful act. It has been held that ignorance of the law will not excuse a voter, but to convict one of illegal voting under the statute it must appear that the voter knew the state of facts which would in point of law disqualify him from voting," citing McGuire v. State, 7 Humph. (Tenn.) 54. But the author adds "Under a similar statute it was held that a voter is not indictable unless his vote is knowingly cast without right, although he had full knowledge of all the facts in relation to his right to vote," citing State v. McCumber, 7 R. I. 349. It must be admitted that the authorities are somewhat in conflict on this question. They are quite thoroughly reviewed and discussed in State v. Savre, 129 Iowa 122, 3 L. R. A. (N. S.) 455. In that case the accused was a young man who slept in his office in the third ward in the city of Osage and took his meals in the first ward of said city. He was charged with illegal voting in the first ward and it appeared on the trial that he had been in doubt whether his legal voting place was where he slept or where he took his meals, and under the advice of counsel had determined it in favor of the place where he took his meals, which the court held was wrong and that his home and voting place was in the ward where his office was located and where he slept. The accused testified that he believed that he was a resident of the first ward and voted there with that understanding. The court held that the question of his intention should have been left to the jury and says "The determination of a person's place of residence is often difficult, and frequently depends upon nice distinctions and complicated questions of law and fact." But at the

same time the court says "This does not mean that a mistake of law will afford any defense, for everyone is presumed to be as familiar with the election laws as with others," and cites with approval cases holding that the belief of a woman that she had a right to vote is no defense; that the belief of a person, convicted of felony and not pardoned, that he had a right to vote because he was convicted when a minor is no defense; that it did not avail a defendant that he believed he had a right to vote in one district when he knew he had not lived in that district the time required by statute; that it did not avail a defendant, foreign born, that he believed he had a right to vote without obtaining his second naturalization papers, and the court quotes from McGuire v. State, *supra*, with approval "If the voter believe himself to be twenty-one years of age, when he is not, and vote, he does not know of the existence of the disqualifying fact and may, on that ground, be excused. But, if he knew that he is only twenty years of age, yet believes he is old enough in point of law to vote, such ignorance of the law will not excuse him. If the voter honestly believe that he has resided six months in the county before the election, and the fact turn out otherwise, he may be excused. But, if he knew that he has been only four months in the county before the election, yet he believes that to reside four months is, in point of law, residence enough, he shall not be excused." The authorities are quite thoroughly collected in the notes to 37 L. R. A. (N. S.) 1177, where State of Missouri v. White, 237 Mo. 208, is re-reported, and while they may not all be reconcilable with the position we take, the great majority of them are. See also McClain on Crim. Law, vol. 2, sec. 949.

We do not perceive any substantial difference between the question of intent, mistake of law, ignorance of law, and mistake of fact involved in this and in other criminal cases. The rule is, except in certain statutory offenses, that there must be a criminal intent and in certain cases like larceny, robbery, receiving

stolen goods, etc., there must be a specific intent. A man cannot commit larceny of his own goods, or goods that he believes belong to him, and he might not be guilty of stealing a horse that he took under an honest belief that the horse was his property, though it should afterwards turn out that the question of title involved a difficult problem of law that was determined against him. But if he were to confess that he knew it was not his horse and knew he had no title to it, but that he honestly believed as a matter of law that he had a right to take it and drive it away and treat it as his own property, his defense would be absurd. In short, questions of residence, questions of title to property and many other questions that can easily be imagined may arise where one acts honestly under a mistake involving some ignorance of the law and is excused because of such mistake. But to hold that a resident of one county may go into another county and vote without any mistake of fact, and then have the question of his mistake of law submitted to a jury to determine whether or not it was an honest mistake is to entirely ignore the long-established, necessary principle that ignorance of the law excuses no man, and open the door to endless litigation in all cases where a particular intent is a necessary requisite to the conviction of crime. If the intent in cases arising under election laws be lacking because of a mistake in a mixed question of law and fact, there is some reason and authority for the position that such mistake if honestly made, is a defense, but we see no reason and find little authority for the claim that a mistake of law only, avails a defendant in election cases more than in other criminal cases.

Plaintiff in error entered a plea of not guilty, and then as a witness in his own behalf confessed the crime with which he stood charged. An extensive investigation of the question whether he honestly mistook the law followed. Many questions arising on the introduction of evidence, instructions to the jury and conduct

of counsel are argued. The jury found the defendant guilty and we see no possible ground for any other finding, and therefore deem it unnecessary to prolong this opinion by discussing questions so presented, further than to say that we have examined the record with some care and are of the opinion that, even assuming that the evidence introduced bearing on the question whether plaintiff in error did or did not honestly mistake the law is material, we find no substantial error in the admission or exclusion of evidence, the conduct of counsel for the People, or the giving and refusing of instructions by the court.

The judgment is affirmed.

*Affirmed.*

Mr. Justice WHITNEY took no part in the decision of this case.