People of the State of Illinois ex rel. Edgar B. Elder, Appellant, v. George L. Quilici, Appellee.

Gen. No. 41,521.

Opinion filed April 14, 1941.

THOMAS J. COURTNEY, State's Attorney, and J. A. COBBEY and D. ELLWOOD DAVIS, both of Chicago, for appellant; J. A. COBBEY and D. ELLWOOD DAVIS, of counsel.

ARTHUR J. GOLDBERG and ARTHUR A. SULLIVAN, both of Chicago, for appellee.

MR. JUSTICE McSURELY delivered the opinion of the court.

This is a quo warranto proceeding brought at the request and on the relation of Edgar B. Elder, who was defeated by defendant at an election on June 3, 1940, to fill a vacancy in the municipal court bench of Chicago. The gist of the action is that this election was null and void in that it was conducted in only 648 out of a total of 3,648 regularly established election precincts in the city of Chicago.

Judge GRABER resigned as an associate judge of the municipal court June 13, 1939, thus creating a vacancy; his unexpired term was for more than one year.

Section 9 of the Municipal Court Act (Ill. Rev. Stat. 1939, ch. 37, par. 364 [Jones Ill. Stats. Ann. 108.034]) provides that ". . . Vacancies in the office of chief justice or associate judge of the Municipal Court shall

be filled by election at the regular municipal, judicial or other general election which shall occur next after a period of sixty (60) days from the time such vacancies respectively occur, but where the unexpired term does not exceed one year, the vacancy shall be filled by appointment by the Governor." The next judicial election following the vacancy caused by the resignation of Judge GRABER was June 3, 1940, when the election of six judges of the superior court of Cook county was scheduled. This election was a regular election for the full terms of the six judges. At this election the relator and the defendant, having been duly nominated by their respective parties to fill the vacancy in the municipal court, were also voted upon.

As there were only six candidates for the superior court there was no contest for these positions. The relator argues that it was not a regular judicial election, as "election" means "the act of choosing" which is not present where there is no contest, and therefore the mandatory provision of the act for filling vacancies in the municipal court at the next regular election does not apply. We find no authority for this contention. The election of the superior court judges was regular in that it conformed to the time fixed by law, regardless of whether there was any contest. A regular election has been defined as "one which recurs at stated intervals as fixed by law; it is one which occurs at stated intervals without any superinducing cause other than the efflux of time. As otherwise defined, such an election is one held to select an officer to succeed to the office upon the expiration of the full term of the incumbent." 18 Am. Jur. (Elections) § 5. In *Kelso v. Cook,* 184 Ind. 173, it was held that the term "general election" means "the selection of officers to serve after the expirations of terms of former ones."

The election of the judges of the superior court held June 3, 1940, was a regular election, at a time fixed by statute. Ill. Rev. Stat. 1939, ch. 46, par. 14a, § 1

[Jones Ill. Stats. Ann. 36.130(1)]. This being so, under the mandate of section 9 of the Municipal Court Act the election to fill the vacancy in the municipal court must also be held on that date, which was the next regular election after a period of 60 days from the time of the vacancy.

Relator concedes that if the only persons elected at this time were the superior court judges, the Board of Election Commissioners had the power to combine election precincts under section 7, article 2 of the City Election Act (ch. 46, par. 180). This provides that whenever the total number of candidates for judgeships nominated by all the political parties does not exceed the number of such judges to be elected, the election commissioners may determine the number of voting precincts without reference to the number of qualified voters therein. The Board of Election Commissioners were thus faced with the question as to whether they should open the polling places in each of the 3,648 precincts in the city of Chicago, at a cost estimated at approximately $300,000, to fill the two-year vacancy in the municipal court. It would be conceded by everyone that the Board of Election Commissioners, in reducing the voting precincts to 648, effected a very substantial financial saving. By combining these polling places into the smaller number, no qualified voter was disfranchised, and no disqualified voter was permitted to vote and no fraud was perpetrated by the board. Thus its action should be upheld unless there is convincing authority that such action was invalid and void.

Recurring again to the provision in the Municipal Court Act concerning vacancies among the associate judges of the municipal court, the language clearly is mandatory that such vacancies shall be filled by election in the regular judicial election occurring after a period of 60 days from the time such vacancy occurred. We need spend no time in arguing as to the meaning

of the word "at" the regular judicial election. It clearly means the vacancy shall be filled "in" the regular judicial election. *Upson v. Almand,* 190 Ga. 376. We are of the opinion that under section 7, article 2 of the City Election Act, the Board of Election Commissioners had the power to determine the number of voting precincts to be established in the city of Chicago for the election of superior court judges on June 3, and for the municipal court vacancy, which was part of the judicial election of that day, notwithstanding there were two candidates for the municipal court vacancy. The election was concededly valid as to the superior court judges. It would seem to follow that the election for the municipal court vacancy was also valid, as it was held in accordance with the provision in section 9 of the Municipal Court Act.

Moreover, there is authority for holding that even if the Board of Election Commissioners improperly combined election precincts in the election of June 3, this would be a mere irregularity which would not void the election. In *People ex rel. Agnew v. Graham,* 267 Ill. 426, the right of defendants to exercise the offices of mayor and aldermen of the city of Earville was challenged in a quo warranto proceeding. The city was made up of three wards; at the election in which defendants were elected, certain of the defendants were elected aldermen of the first and second wards, but only one polling place was established for the entire city and this in the third ward. It was contended that under the law a polling place had to be established in each ward. The court held the establishment of the single polling place for the entire city was a mere irregularity which would not avoid the election where no legally qualified voter was disfranchised or any disqualified voter permitted to vote; that as the election laws contained no express provision declaring void an election held at a polling place outside of the voting precinct, the election laws would be construed to be

directory and not mandatory when challenged after the election. The opinion said (p. 440): "In recent years the legality of votes where the polling place has been located at a place convenient for the voters, by the proper officers, only a short distance outside of the election district, has been passed upon by the courts in several of the States. The courts of last resort in the majority of these cases have held that where it was shown that no legal voter was thereby deprived of his vote and the location was not selected from any improper motive, no fraud or other harm being shown or charged, such location of a polling place would not avoid the election." [Citing many cases.] And (pp. 443, 444) that where the spirit of the election law is not violated and when no legal voter has been deprived of his vote and no harm or injury has been done to anyone, literal compliance with prescribed forms will not be required. The opinion is quite lengthy and comprehensive and repeatedly states that an election will not be held invalid because the polling places were not properly located. Another lengthy decision treating the same subject is *Kerlin v. City of Devils Lake*, 25 N. D. 207, 215, 216. There the statute plainly provided that the city authorities should provide polling places at some place within each ward, but the statute was not followed. The court said, "At first blush, and from abstract reasoning without a careful investigation of the many adjudications throwing light on the question before us, one would likely conclude that the election was void. But research discloses that the great weight of authority, if not all the authority, is the other way, and that public policy enters into the question." And the opinion concluded that when the statute does not in express terms declare such an election shall be void it will be sustained, "and the violation of statute will be treated as an irregularity, going to the form, instead of to the substance, where, from all the facts, the court does conclude that, in spite of the

departure from statutory requirements, a full and fair ballot has been cast and a true and fair return of the entire election has been canvassed and made.'' Other cases hold in general terms that statutory provisions regulating the conduct of an election are deemed directory after an election in which no improper voting has occurred. *People v. Becker,* 179 Ill. App. 446, 450, 451; *Simons v. People,* 119 Ill. 617, 623; *Davis v. State,* 75 Tex. 420, 431, 433; *Petition of Clee,* 119 N. J. L. 310, 321; *State ex rel. Brown v. Town of Westport,* 116 Mo. 582, 591; *Ex parte White,* 33 Tex. Crim. Rep. 594, 28 S. W. 542. See also *People ex rel. Cole v. Kinsey,* 294 Ill. 530, 531, where it was said that an irregularity should not require the election to be held void, as the irregularity did not interfere with the result of the election. *Waters v. Heaton,* 364 Ill. 150, 160, is to the same effect, as are a number of other decided cases in this State. *Ackerman v. Haenck,* 147 Ill. 514, 519; *Schuler v. Hogan,* 168 Ill. 369, 376; *Dale v. Irwin,* 78 Ill. 170, 180; *Cleland v. Porter,* 74 Ill. 76; *People v. Sackett,* 351 Ill. 363, 377; *Tucker v. Coleman,* 310 Ill. 450.

Relator argues that the election of June 3 was not a ''free and equal'' election as provided for by the constitution of Illinois. In *Moran v. Bowley,* 347 Ill. 148, 162, a similar point was made and the court held that ''An election is free where the voters are exposed to no intimidation or improper influence and where each voter is allowed to cast his ballot as his own conscience dictates. . . . Elections are equal when the vote of each voter is equal in its influence upon the result to the vote of every other elector—where each ballot is as effective as every other ballot.'' There is no charge that any voter in the instant election of June 3, 1940, was intimidated or denied his right to cast his ballot.

Relator also says the Board of Election Commissioners, by combining the polling places by virtue of a resolution of May 9, 1940, which was 25 days before

the election of June 3, violated section 1, article 7 of the Illinois constitution which provides that there must be a residence of 30 days in the precinct as a qualification for voting. The resolution of the board did not deny to any elector who had resided in an election precinct 30 days next preceding June 3 the right to vote. All the resolution did was to designate a common polling place for several election precincts. In *City of Chicago v. People,* 80 Ill. 496, 506, it was held that the changing of a polling place within the 30-day period prior to an election does not invalidate the election. See also *Village of Averyville v. City of Peoria,* 335 Ill. 106, 117, 118. A similar point was considered in *Welsh v. Shumway,* 232 Ill. 54, cited by the relator. It was held (p. 74) that the court would not be justified in holding the votes were illegal because of the change of district. Moreover, that case involved an election contest in which some votes were challenged and not a quo warranto proceeding attempting to invalidate an entire election.

Although relator argues to the contrary, it was shown that timely notice was given of the time and place of the election of June 3. Section 19 of article 2 of the City Election Law (Ill. Rev. Stat. 1939, ch. 46, par. 192 [Jones Ill. Stats. Ann. 43.283]) requires the board "to give timely notice through the press of the time and place . . . of election in each precinct. . . ." It is stipulated that an official notice of the election of June 3, 1940, listing the polling places and the offices to be filled, was published in the Chicago Herald-American, a newspaper of general circulation published in the city of Chicago. In addition the board caused to be posted in each of the 3,648 precincts in Chicago an official notice of the election to be held June 3 at the polling places selected by the board, and also caused a second printed notice to voters to be posted in the 3,000 precincts of the city wherein no polling places were open on June 3, which notice designated the loca-

tion of the polling place of the voting area of which the precinct wherein the notice posted was a part. And also a third notice was posted in each of the 648 polling places established for the election on June 3, designating the precincts which were combined into the respective voting areas for which the 648 polling places were open. Moreover, mimeographed lists of voting areas and the locations of the polling places were prepared for distribution to any persons who might make inquiries at the Board of Election Commissioners. In addition to this the stipulation recites that the metropolitan newspapers of Chicago, subsequent to the adoption on May 9, of the resolution combining the number of polling places to be opened on June 3, published these items from time to time. The record shows beyond doubt that adequate and timely notice was given to the electorate of the reductions of the voting precincts by the board.

The relator had ample opportunity, before the election, to attempt to compel the board by mandamus to open all the precinct polling places. He stood by and took no action in this respect until the election had been held, which resulted in his defeat by a majority of 197,000 votes. In *People ex rel. Earley v. Bierman,* 249 Ill. App. 217, quo warranto proceedings were brought to oust defendant from the office of police magistrate; it was charged the election was illegal in that the names of the relator and the defendant appeared on illegal ballots and defendant was disqualified from holding the office of police magistrate, as, at the time of his election, he was a justice of the peace and could not hold both offices at the same time. It was held that, knowing all these facts, the relator participated in the primary election and took no steps by mandamus or otherwise to have the names of the candidates properly placed upon the ballots. The opinion (pp. 219, 220) says: ''If he had received a majority of the votes cast and the conditions here were reversed,

in all probability, he would as strenuously insist on his right to hold the office as he is now in attempting to oust his successful opponent.'' This language is pertinent to the instant case.

We hold the election of June 3, 1940, at which defendant was elected, was a valid election, and that he is lawfully holding and executing the office of associate judge of the municipal court.

The judgment of the trial court in dismissing the suit is affirmed.

*Judgment affirmed.*

O'CONNOR, P. J., and MATCHETT, J., concur.