(No. 79857.

RONALD GEER, Appellee, v. ROBERT KADERA, Appellant.

*Opinion filed September 19, 1996.*

Bernard Wysocki & Associates, P.C., of Waukegan (Bernard Wysocki and Diane Curtis, of counsel), for appellant.

Newton E. Finn, of Lake Bluff, for appellee.

JUSTICE McMORROW delivered the opinion of the court:

We granted leave to appeal in this case (155 Ill. 2d R. 315) in order to determine whether the circuit court is the proper forum in which to bring a post-election challenge to a candidate's nomination papers. We must also decide whether a canvassing board's declaration of the results of an election precludes a circuit court from later declaring the true winner in an election contest. Alternatively, we are asked to determine whether a *mandamus* action may lie against a canvassing board which, having discharged its duties, has ceased to exist *functus officio*.

## BACKGROUND

On April 18, 1994, Ronald L. Geer filed a "Petition to Contest" the election of Robert A. Kadera, Geer's sole opponent in the March 15, 1994, general primary election. Geer sought a judicial declaration that Kadera's election to the two-year term of precinct 155 Lake

County Republican committeeman was null and void. Geer claimed, among other things, that Kadera was not legally qualified to hold office because he did not reside within the precinct as required by the Election Code. 10 ILCS 5/7—8(b) (West 1994). Specifically, Geer alleged that Kadera misrepresented his place of residence as being 21990 6th Avenue, Lake Villa, Illinois, in a sworn statement of candidacy filed on December 6, 1993. 10 ILCS 5/7—10 (West 1994). Geer did not notify election officials of Kadera's misrepresentation, however, until the day after the election.

Geer further claimed that the Lake County canvassing board improperly declared Kadera the winner of the election 21 days after it previously announced that Geer had won. According to Geer, the board originally convened on March 18, 1994, and proclaimed him the winner even though he had received fewer votes than Kadera. Geer later received a "Certificate of Election" from the Lake County clerk's office which confirmed his election as Republican precinct committeeman. Notwithstanding the issuance of the certificate, the board subsequently reconvened on April 8, 1994, and declared Kadera the winner. This subsequent declaration of Kadera as winner, Geer asserted, was void *ab initio* because the board lacked statutory authority to recanvass the votes more than seven days after the election. 10 ILCS 5/22—1 (West 1994).

Kadera moved to dismiss the action pursuant to section 2—619 of the Code of Civil Procedure. 735 ILCS 5/2—619 (West 1994). With respect to the accusation that he had filed a fraudulent statement of candidacy, Kadera admitted that he "incorrectly" stated that he resided at 21990 6th Avenue. He argued, however, that pursuant to the Election Code any objections to a candidate's qualifications, including residency, must be brought before the proper election authority within five

business days after the last day for filing the nomination papers. 10 ILCS 5/10—8 (West 1994). Relying on section 10—8 of the Code, Kadera further claimed that, because Geer failed to object within the time limits set forth in the Code, he had waived any objection to Kadera's nomination papers, including his compliance with the statutory residency requirements.

In regard to the other charge, Kadera did not directly address Geer's contention that the Lake County canvassing board improperly recanvassed the votes more than seven days after the election. Nevertheless, he noted that election contests are ordinarily limited to a determination of the results of the election, *i.e.*, the number of valid votes for each candidate, and that in this case, the circuit court should only hear evidence limited to that issue. In support of this argument, Kadera attached to his motion to dismiss a certified copy of a computer printout of the election returns. The printout indicated that Kadera received 102 votes versus the 65 votes cast for Geer. Even so, next to Geer's total was the following handwritten notation: "3/21/94 ✔ = winner per SAO."[1] Directly beneath that notation was another handwritten notation, purportedly attested to by Lake County clerk and board member Linda Hess, which states: "4/8/94 Kadera winner per States Atty Office. LH."

The circuit court of Lake County was then called upon to resolve the following conundrum: Upon which candidate should the office of Republican precinct com-

---

[1] The letters "SAO" refer to the Lake County State's Attorney's office. We note that neither party has offered any explanation as to what authority the State's Attorney has in being the sole declarant of the results of this or any other election. At most, subsection (2) of section 10—9 of the Code authorizes the State's Attorney, or his or her assistant, to act as a member of the "county officers electoral board." 10 ILCS 5/10—9(2) (West 1994).

mitteeman fall: the candidate armed with a certificate of election which he had received as the result of being declared the winner by a state agency with no authority to do so, but who otherwise lived in the proper geographic territory, or the candidate embraced by nearly two-thirds of the voters, but who admittedly did not reside among his constituents? The circuit court, deciding in favor of the latter, ruled as follows:

"1) The canvassing board [sic] 1st official certification found Mr. Kadera having [the] highest number of votes for Prec. 155 Lake Villa.

2) That the question of residency brought by Pet. Geer is not properly brought for the Ct. [sic] determination but is a matter to be decided by the Republican Central Committee.

3) That [the] motion to take evidentiary evidence is denied, [the] facts not disputed & [the] documents unambiguous regarding [the] action of [the] canvassing board."

On appeal, the appellate court affirmed the circuit court's dismissal of the action, holding that the circuit court properly found that Kadera had won the election by virtue of his having received the greater number of votes. No. 2—95—0456 (unpublished order under Supreme Court Rule 23). The appellate court further concluded that an election contest was not the appropriate legal vehicle for challenging a candidate's failure to comply with the statutory residency requirement. Thus, the appellate court affirmed the dismissal of the election contest.

After rendering its decision on the merits and hence disposing of the entire appeal, the appellate court then invited Geer to pursue a common law writ of *mandamus*. In *dicta*, the appellate court stated that, "[u]nder the circumstances of this case, [Geer] may sue the Board to seek a writ of *mandamus* invalidating the election of [Kadera]."

Geer then filed a new and separate *mandamus* action against the canvassing board, joining Kadera as a

necessary party. Geer v. Lake County Canvassing Board, No. 95—MR—368 (Cir. Ct. Lake County). That complaint focused exclusively upon the fact that Kadera did not reside within precinct 155. Consistent with the appellate court's suggestion, Geer requested a writ of *mandamus* directing the canvassing board to reconvene and invalidate Kadera's election.

Meanwhile, in the case at bar, Kadera filed a petition for leave to appeal before this court despite the appellate court's affirmance of the circuit court's order dismissing Geer's election contest *in toto*. Not surprisingly, Kadera did not seek review of the appellate court's favorable judgment; instead, he sought a reversal of what he described as the appellate court's "ruling" that a writ of *mandamus* may lie against the Lake County canvassing board. Among other things, Kadera pointed out that the canvassing board had performed all of its functions in 1994, and therefore no longer exists. He further noted that this court has previously held that a writ of *mandamus* will not issue against a defunct canvassing board. *People ex rel. Wilson v. Mottinger*, 212 Ill. 530 (1904). Accordingly, Kadera requests this court to reverse that portion of the appellate court's ruling regarding the filing of a *mandamus* action.

Geer, on the other hand, did not respond to Kadera's petition for leave to appeal, but filed a brief seeking cross-relief. 155 Ill. 2d R. 315(g). In his petition, Geer likewise relied on *Mottinger*, arguing that "[i]f this Court lacked the power to reconvene a canvassing board after it had performed its duty—rightly or wrongly *** then certainly such a board had no power to reconvene sua sponte three weeks after it had disbanded." Geer seeks a reversal of the judgment of the appellate court, but not its ruling regarding the propriety of the *mandamus* action.

## ANALYSIS

It is against this backdrop that we must decide the

substantive issues in this case, however obfuscated they may have become. Originally, the parties asked the circuit court to decide whether a candidate who misrepresented his residency may nevertheless hold office because his fraud went undetected until it was too late. They also called upon the court to determine whether that same candidate was properly declared the winner of the election in the first instance.

In addition to resolving those two questions, we are asked to determine whether a writ of *mandamus* may issue in another case pending before another tribunal involving another party not even before this court. Geer .v. Lake County Canvassing Board, No. 95—MR—368 (Cir. Ct. Lake County). That issue arises in a case which is technically moot.[2]

Thus, what began as a simple election contest—in what should have been but a single visit to the courthouse—has evolved into two separate proceedings. With these prefatory remarks, we begin our analysis with an overview of the relevant portions of the Code. 10 ILCS 5/1—1 *et seq.* (West 1994).

### Residency Requirements

Section 7—10 of the Election Code mandates that a nomination petition for the office of precinct committeeman must be filed on behalf of each candidate. 10 ILCS 5/7—10 (West 1994). It also requires that each petition must include a sworn statement of candidacy which "shall set out the address of such candidate." 10 ILCS 5/7—10 (West 1994). The petition must further "state that the candidate *** is qualified for the office specified." 10 ILCS 5/7—10 (West 1994). In order to be quali-

---

[2]This case, argued in May 1996, involves an appeal from a March 1994 election dispute for an office whose term is two years. Nevertheless, this case is subject to an exception to the mootness doctrine. See *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391 (1994) (public interest exception).

fied for this particular office, the Code elsewhere provides that "[e]ach candidate for precinct committeeman must be a bona fide resident of the precinct where he seeks to be elected." 10 ILCS 5/7—8(b) (West 1994). The purpose of these and similar provisions is to ensure an orderly procedure in which only the names of qualified persons are placed on the ballot. *Lewis v. Dunne*, 63 Ill. 2d 48 (1976).

Elections are quintessentially political in nature, and disputes are not uncommon. With that in mind, the General Assembly saw fit to establish an expedient, *preelection* mechanism for resolving any disputes relating to a candidate's nomination papers. Beginning with section 10—8, the Code requires all objections to a candidate's nomination papers to be filed no later than five business days after the last day for the filing of nomination papers in general. 10 ILCS 5/10—8 (West 1994). The provision also indicates that the nomination papers will be "deemed to be valid" in the absence of a timely objection. 10 ILCS 5/10—8 (West 1994). Section 10—8 states:

> "Certificates of nomination and nomination papers *** being filed as required by this Code, and being in apparent conformity with the provisions of this Act, shall be deemed to be valid unless objection thereto is duly made in writing within 5 business days after the last day for filing the certificate of nomination or nomination papers ***." 10 ILCS 5/10—8 (West 1994).

The Code further creates various electoral boards to resolve the disputes (10 ILCS 5/10—9 (West 1994)), grants those same boards the power to administer oaths, issue subpoenas and examine witnesses (10 ILCS 5/10—10 (West 1994)), and provides a party with judicial review (10 ILCS 5/10—10.1 (West 1994)). The failure to utilize these procedures will result in a waiver of the objection. See generally *Swiney v. Peden*, 306 Ill. 131 (1922).

It is undisputed that in this case Geer did not file an objection with the appropriate electoral board until the day after the election. By that time Kadera's nomination papers were already "deemed valid" by operation of section 10—8, and the board no longer possessed any statutory authority to entertain Geer's objection. Moreover, Geer could not resuscitate his objection in the circuit court of Lake County under the guise of an election contest. A circuit court does not have original jurisdiction over objections to nomination papers. *Dilcher v. Schorik*, 207 Ill. 528 (1904). Indeed, the granting of judicial review under section 10—10.1 of the Code was never intended to vest the circuit courts with jurisdiction to conduct a *de novo* hearing into the validity of a candidate's nomination papers. *Williams v. Butler*, 35 Ill. App. 3d 532 (1976); *Wiseman v. Elward*, 5 Ill. App. 3d 249 (1972). It is the electoral board, and not the courts, which have been vested with original jurisdiction to hear such disputes. *Swiney v. Peden*, 306 Ill. 131 (1922); *People ex rel. Klingelmueller v. Haas*, 111 Ill. App. 3d 88 (1982).

This conclusion is supported by *Dilcher v. Schorik*, 207 Ill. 528 (1904). In that case, the petitioner filed a statutory election contest in the circuit court of Cook County challenging his opponent's election as town constable. The petition did not contest the appellee's election *per se*, but only the regularity of his nomination and his eligibility to hold office. With respect to the latter issue, the appellant claimed that his opponent was ineligible because he did not reside within the town limits for a period of one year prior to the day of the election. Citing section 10 of the Ballot Law—which provides that certificates of nomination and nomination papers shall be deemed valid if not objected to—this court affirmed the order of the circuit court dismissing the action. This court concluded that the circuit court

did not have jurisdiction over the validity of the nomination papers, a question properly reserved for the appropriate election authority. *Dilcher*, 207 Ill. at 529; see also *Swiney v. Peden*, 306 Ill. 131 (1922) (holding that a failure to file objection to nomination papers before board waives objection which cannot be raised again in election contest).

This court reached its decision in *Dilcher* even though the Ballot Law at that time did not provide for any judicial review. Our holding that the circuit court does not have subject matter jurisdiction to conduct a *de novo* hearing into any controversies concerning irregularities in a candidate's nomination papers has been made easier by the 1967 amendments to the Code. Under the amendments, the circuit courts were expressly granted only limited jurisdiction to *review* decisions of the electoral board. 10 ILCS 5/10—10.1 (West 1994). Thus, by legislative fiat, a court's inquiry into discrepancies in nomination papers is limited to a "review" of the board's record. *Wiseman v. Elward*, 5 Ill. App. 3d 249 (1972).

In this case, we see no reason to depart from this court's prior holdings in *Dilcher* and *Swiney*. Compliance with the dispute resolution procedures contained in article 10 of the Code is essential to an orderly pre-election process. Prompt resolution ensures that ample time remains for the preparation of ballots listing only the names of qualified candidates. As explained in *Thurston v. State Board of Elections*, 76 Ill. 2d 385, 389 (1979), "[i]t is vitally important that nomination objections be resolved at the earliest possible time." That is one of the primary reasons why the legislature created the various electoral boards and vested them, and not the courts, with original jurisdiction over issues pertaining to nomination papers. It would be wholly improper, therefore, for this or any other court to undertake its

own fact-finding mission under the circumstances presented here.

We conclude, as this court has in the past, that a person once elected cannot be removed from office *vis-a-vis* a statutory election contest merely because of a deficiency in his or her nomination papers. Objections to certificates of nomination and nomination papers are, in effect, dissolved by the general election. *Thurston*, 76 Ill. 2d at 389 (citing *Welsh v. Shumway*, 232 Ill. 54 (1907), *Schuler v. Hogan*, 168 Ill. 369 (1897), and *People ex rel. Elder v. Quilici*, 309 Ill. App. 466 (1941)).

We caution that our holding not be expanded beyond the facts presented for our review. We determine only that the failure to file a timely, *pre-election* objection to a candidate's nomination papers results in those papers being deemed valid by virtue of section 10—8 (10 ILCS 5/10—8 (West 1994)). A person cannot thereafter revive such an objection in the circuit court by means of an election contest. However, because a person's nomination papers may be deemed valid does not mean that person automatically becomes eligible to hold a particular office. Unlike a candidate's nomination papers, a person's eligibility to hold office may be challenged at any time during the term of that office. Indeed, an objection which relates to a person's eligibility, such as a residency requirement, may be presented for judicial review under appropriate circumstances. *Greenwood v. Murphy*, 131 Ill. 604 (1890) (*quo warranto*); *Dilcher v. Schorik*, 207 Ill. 528 (1904); *Edgcomb v. Wylie*, 248 Ill. 602 (1911); *Swiney v. Peden*, 306 Ill. 131 (1922); *Wagler v. Stoecker*, 393 Ill. 560 (1946); see also *People ex rel. Henderson v. Redfern*, 48 Ill. App. 2d 100 (1964); *Breslin v. Warren*, 45 Ill. App. 3d 450 (1977); *City of Highwood v. Obenberger*, 238 Ill. App. 3d 1066 (1992). Today's decision leaves undisturbed that body of law

which permits such *post-election* challenges to a person's right to hold office.[3]

Accordingly, because Geer did not file an objection before the appropriate electoral board within the time limits set forth in the Code (10 ILCS 5/10—8 (West 1994)), we affirm that portion of the circuit court's order dismissing Geer's statutory election contest as it relates to Kadera's nomination papers.

### Canvass of Votes

It is for an entirely different reason that we must also reject Geer's contention that the circuit court erred in declaring Kadera the winner of the election. As previously noted, Geer claimed that (1) the Lake County clerk's office issued him a certificate of election; and (2) the canvassing board improperly reconvened more than seven days after the election. 10 ILCS 5/22—1 (West 1994).

With respect to the issuance of the certificate, it is well settled that "the certificate of election is merely *prima facie* evidence as to the result. In a proper proceeding the authorities may go behind the certificate *** and ascertain the real facts." *People ex rel. Woods v. Green*, 265 Ill. 39, 42 (1914). Because issuing a certificate of election is not a discretionary function, but a ministerial task, any error or mistake on the part of the clerk's

---

[3]Geer observes in his petition for cross-relief that an action in *quo warranto* could not lie here under the authority of *People ex rel. Brundage v. Brady*, 302 Ill. 576 (1922). In *Brady*, this court held that the office of district committeeman of the Republican party, a purely political office which did not involve the franchise and prerogatives of the state, could not be tested by *quo warranto*, which ordinarily is implicated only when the state has an interest in the matter. We note, however, that the Code has undergone numerous amendments since *Brady* was decided which involve a substantial increase in the regulation of party elections, as well as the statutorily mandated eligibility requirements for precinct committeemen.

office cannot have a binding effect on the outcome of the election. "[The] right to the office depends on the ballots and not on a commission." *Green*, 265 Ill. at 42. Consequently, the fact that Geer may have received a certificate of election, inadvertently or otherwise, does not automatically foreclose a court from inquiring into the "real facts" and determining which candidate received the highest number of votes.

Geer next cites section 22—1 of the Code in support of his argument that the canvassing board lacked statutory authority to reconvene more than seven days after the election. 10 ILCS 5/22—1 (West 1994). That section, however, does not apply to this case. Section 22—1 states · in relevant part:

> "Within 7 days after the close of the election at which candidates *for offices hereinafter named in this Section* are voted upon, the county clerks of the respective counties, with the assistance of the chairmen of the county central committees of the Republican and Democratic parties of the county, shall open the returns and make abstracts of the votes on a separate sheet ***." (Emphasis added.) 10 ILCS 5/22—1 (West 1994).

Of the 17 offices thereafter enumerated, the office of precinct committeeman is noticeably absent. Thus, by its terms, section 22—1 does not advance Geer's argument that the canvassing board impermissibly declared Kadera the winner.

Even if the canvassing board lacked statutory authority to reconvene, any irregularities in that regard became irrelevant after Geer filed his election contest. That is because such a contest looks beyond the actions of the canvassing board and determines for itself which candidate received the greatest number of votes. See generally *Mayes v. City of Albion*, 374 Ill. 605, 609 (1940).

It is true that canvassing boards, as creatures of statute, derive their powers solely from a legislative grant of authority. As such, the canvassing board here

had no inherent authority to reconvene after having fully discharged its duties. *Donahoe v. Owens*, 277 Ill. 318 (1917); *People ex rel. Wilson v. Mottinger*, 212 Ill. 530 (1904). Nevertheless, as noted in connection with the clerk's issuance of a certificate of election, the "duties of the canvassing board are merely ministerial, and omissions or mistakes of that board can have no controlling influence on the election." *People ex rel. Woods v. Green*, 265 Ill. 39, 42 (1914); see also *Wells v. Robertson*, 277 Ill. 534, 539 (1917) (describing board's function as a "mere mechanical or mathematical duty" in which votes are computed and results declared).

Concomitantly, the board's acts or mistakes, including its *ultra vires* act of reconvening 21 days after the election, have no bearing on the outcome of the election contest. "Repeated decisions have firmly established the rule that the purpose of an election contest is to ascertain how many votes were cast for or against a candidate, or for or against a measure, and thereby ascertain and render effective the will of the people." *Wagler v. Stoecker*, 393 Ill. 560, 562 (1946). The unauthorized acts of a canvassing board cannot disenfranchise the electorate of its vote. To hold otherwise would allow the will of the people to be defeated if a ministerial office erred in carrying out its charge.

In this case, the circuit court found that Kadera had received the highest number of votes. Geer does not dispute that Kadera received 102 out of the 167 votes cast. Consequently, under both section 7—8(b) of the Code, which provides that the candidate "having the highest number of votes shall be such precinct committeeman of such party for such precinct" (10 ILCS 5/7—8(b) (West 1994)), and section 7—59, which also states that the "person receiving the highest number of votes of his party for precinct committeeman of his precinct shall be declared elected precinct committeeman from

said precinct" (10 ILCS 5/7—59 (West 1994)), the circuit court correctly declared Kadera the winner of the election.

Our conclusion in this matter is based upon inveterate principles of Illinois election law. Long ago this court observed in *People ex rel. Fuller v. Hilliard,* 29 Ill. 413, 425 (1862), that the "question in all such cases should be, whom did a majority of the qualified voters elect? Forms should be made subservient to this inquiry, and should not rule in opposition to substance." Since that time, this court has adhered to that principle. See *MacGuidwin v. South Park Commissioners,* 333 Ill. 58, 72 (1928); *Mayes v. City of Albion,* 374 Ill. 605, 609 (1940); *Wagler v. Stoecker,* 393 Ill. 560, 562 (1946). We do not depart from that principle today. Accordingly, we affirm the order of the circuit court dismissing Geer's election contest.

### *Mandamus* Action

We next turn our attention to the question of whether we may, as Kadera requests, reverse the appellate court's "ruling" that a writ of *mandamus* may lie against the canvassing board. As previously discussed, Kadera successfully obtained a dismissal of Geer's election contest in the circuit court of Lake County. On appeal, the appellate court agreed with Kadera and affirmed the circuit court's order. However, the appellate court intimated in *dicta* that a *mandamus* action may lie against the canvassing board.

It is upon that *dicta* that Kadera now appeals to this court. We believe, however, that Kadera's request for a reversal of the appellate court's *dicta* is not properly before this court, and for the reasons which follow, we dismiss this portion of the appeal.

As a general rule, "[a] party cannot complain of error which does not prejudicially affect it, and one who has obtained by judgment all that has been asked for in

the trial court cannot appeal from the judgment." *Material Service Corp. v. Department of Revenue*, 98 Ill. 2d 382, 386 (1983). In addition, "[i]t is fundamental that the forum of courts of appeal should not be afforded to successful parties who may not agree with the reasons, conclusion or findings below." *Illinois Bell Telephone Co. v. Illinois Commerce Comm'n*, 414 Ill. 275, 282-83 (1953); see also *N-Ren Corp. v. Illinois Commerce Comm'n*, 98 Ill. App. 3d 1076, 1078 (1981) (citing *New York Telephone Co. v. Maltbie*, 291 U.S. 645, 78 L. Ed. 1041, 54 S. Ct. 443 (1934), and *Lindheimer v. Illinois Bell Telephone Co.*, 292 U.S. 151, 78 L. Ed. 1182, 54 S. Ct. 658 (1934)). Nor should such forums be afforded to one who merely disagrees with the *dicta* of a lower court, but not its judgment.

In the case at bar, Kadera obtained from the circuit court all of the relief which he sought, *i.e.*, dismissal of Geer's election contest *in toto*. He triumphed again upon Geer's appeal. The appellate court, in its judgment, affirmed the order of the circuit court dismissing the election contest. Consequently, Kadera had no standing to appeal to this court, having obtained by judgment all that he asked for, both in the circuit court and in the appellate court. *Material Service Corp. v. Department of Revenue*, 98 Ill. 2d 382, 385 (1983). It is the appellate court's judgment, and not its *dicta*, that is before us on review.

The fact that the appellate court may have suggested in *dicta* that an alternative remedy might exist did not *ipso facto* create an appealable interest. *Dicta* is not binding authority under the rule of *stare decisis*. *Wilson v. The Hoffman Group, Inc.*, 131 Ill. 2d 308, 324 (1989). As a result, the appellate court's comments as to the availability of a writ of *mandamus* can have no effect upon the action pending in the circuit court.

We also note that the complaint that actually joins

the *mandamus* issue is currently pending before another tribunal and involves another party which is not a litigant before this court, *i.e.*, the Lake County canvassing board. Geer v. Lake County Canvassing Board, No. 95—MR—368 (Cir. Ct. Lake County). We have no jurisdiction over that case. Further, Kadera is asking this court, and not the circuit court where the matter is pending, to decide whether the *mandamus* complaint states a cause of action. As a court of review, we will not rule on a motion to dismiss a complaint that is pending in the trial court.

Accordingly, we dismiss that portion of the appeal relating to the *mandamus* issue.

## CONCLUSION

Kadera's admittedly "incorrect" representation of his residency has so far remained insulated from judicial redress. That the law abhors a fraud is a truism which requires no citation to authority. That the law will not tolerate an intruder's usurpation of office by means of a misrepresentation is an equally venerable proposition. Today, in affirming the judgment below, we do not place our imprimatur upon Kadera's actions. We merely decide those issues which are properly before us for review.

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Appellate court judgment affirmed.*